## GIBSON OIL CO. v. HAYES EQUIPMENT MANUFACTURING CO.

No. 20383. Opinion Filed Feb. 28, 1933.

Rehearing Denied April 25, 1933.

Wallace & Wallace, for plaintiff in error.

Samuel A. Boorstin and John F. Conway, for defendant in error.

BUSBY, J. This is a replevin action wherein the Hayes Equipment Manufacturing Company seeks to recover from the Gibson Oil Company eight gasoline pumps. These pumps were sold by the Hayes Equipment Manufacturing Company to one S. L. Martin, under a conditional contract executed on August 24, 1927, by the terms of which title was retained in the vendor until the purchase price should be paid in full. Two hundred and twenty dollars was paid on the purchase price, and the unpaid portion thereon at the time of trial was approximately $754.84, plus interest. On the same date Martin agreed to transfer these pumps to the Gibson Oil Company for a consideration of $960, $268 in cash, and the balance in credit on a pre-existing indebtedness owing by Martin to the Gibson Oil Company. Warehouse receipts were issued bearing date of August 25, 1927, and the pumps were delivered to the Gibson Oil Company directly from the warehouse. The conditional sales contract executed by Martin was not recorded until September 7, 1927. Other facts pertinent to the issues herein will be mentioned hereafter. A jury was waived and the cause was tried to the court. After hearing evidence of both parties, the court rendered judgment for the plaintiff for the possession of the property, or in lieu thereof its value, and fixed the value at $900. From this alternative judgment, the defendant appeals. The parties will be re-

ferred to as they appeared in the court below.

The defendant challenges the sufficiency of the evidence to support the judgment. Its several contentions may be grouped under four heads, and they are as follows:

(1) That there is no evidence tending to establish that the defendant ever received the particular pumps for the possession of which the plaintiff brought this action.

(2) That there is no evidence of the value of the pumps upon which the court could base its alternative judgment for $900.

(3) That the record supports the view that the defendant was a purchaser for value without notice, actual or constructive, of the existence of the conditional sales contract, and that any contrary finding by the trial court is contrary to the weight of the evidence.

(4) That the defendant consented to the transfer and thereby waived its rights under the conditional sales contract.

We will consider these contentions in the order stated. The issue of whether or not the defendant received the pumps which were mentioned in the plaintiff's petition was not closely tried. The plaintiff offered in evidence warehouse receipts describing these particular pumps, on the bottom of which receipts purporting to be signed by the defendant acknowledged the delivery thereof to the defendant. These warehouse receipts were first objected to by the defendant and then this objection was withdrawn and they were permitted to be introduced in evidence without objections. They show upon their face the delivery of the pumps to the defendant. No evidence was offered by the defendant to contradict this evidence on the part of the plaintiff, or to dispute the receipt of the pumps. It appears too, in the testimony of S. L. Martin, who was the vendee under the conditional sales contract and who was a party to both of the contracts, that the pumps purchased from the Hayes Equipment Manufacturing Company are the same pumps as those delivered to the Gibson Oil Company. The following question and answer appear as a part of his examination:

"Q. Now, about the proposition about turning these pumps that they came there for, tell the court about that. A. I asked Mr. Phillips if it would be possible to buy some more pumps on credit to balance that account and turn them over to the Gibson Oil Company, and that was agreeable to both Mr. Phillips and the representative of the Gibson Oil Company, so we made out

the contracts and they proceeded to deliver the equipment to the Gibson Oil Company."

In view of the warehouse receipts introduced in evidence and the above testimony quoted from the record, and in view of the absence of any testimony in conflict therewith, we hold that the contention of the defendant that there was no evidence to support the finding that defendant received the particular pumps concerned in this action is without merit.

The second contention of the defendant that there is no evidence of value is also without merit for the reason that it appears from the record that the answer of the defendant admits receipt of eight gasoline pumps from S. L. Martin "of the value of $900." It being established that these pumps were the same pumps claimed by the plaintiff, and their value being admitted by the pleadings, there was no issue thereon which would require the introduction of evidence. It also appears from the record that counsel for the defendant at the close of the evidence in a statement to the court used the following language:

"Mr. Wallace: I just made that suggestion to the court. Another suggestion I want to make is this: Now, the value of these pumps is admitted."

The balance due plaintiff under the conditional sales contract was $754.84, plus interest. However, the question of whether the indebtedness due plaintiff is a limitation on the amount of the alternative judgment is not raised by the briefs of the defendant, and is therefore not considered herein.

The next question that presents itself is whether or not the defendant was a purchaser for value without notice, actual or constructive, of the existence of the conditional sales contract. At the time the defendant purchased the gasoline pump from Martin, the conditional sales contract was not of record and it was therefore not charged with constructive knowledge thereof. The plaintiff urges in support of the judgment of the trial court that the defendant had actual knowledge of the existence of the conditional sales contract imputed to it through one of its agents, a Mr. Deathridge. If this is true, the recording of the contract was immaterial. Security Nat. Bank of Oklahoma City v. Truscon Steel Co., 92 Okla. 81, 218 P. 665.

There is a sharp conflict in the testimony concerning this point. It appears from the evidence that Mr. Deathridge was the agent of the defendant in charge of its Tulsa business, and had been endeavoring for some time before the sale of these pumps

to collect a bill owing to the defendant by S. L. Martin for something over $600. This indebtedness became a part of the purchase price of the pumps. The witness S. L. Martin testified that at the time the conditional sales contract was executed by himself to the plaintiff, Mr. Deathridge was present in his office, both while the negotiations were going on for the purchase of the pumps from the plaintiff by Mr. Martin and when the conditional sales contract was finally signed. Further, that Deathridge had ample opportunity to know exactly what was going on. Mr. Deathridge did not appear as a witness. It appears from the testimony also that the agent, Deathridge, assisted and acted in conjunction with a Mr. Hultsman, the vice president of the defendant company, in making the deal to purchase the same from Martin. It is a generally recognized rule of law that the knowledge of the agent is imputed to the principal in connection with any transaction conducted by, or participated in, by the agent in behalf of the principal. It is true there is some conflict as to whether or not the agent, Deathridge, was present when the conditional sales contract was executed. However, this court is committed to the doctrine that where there is a disputed question of fact upon which there is conflicting evidence, the finding of the trial court thereon will not be disturbed where it is reasonably supported by the evidence. We, therefore, conclude that defendant through its agent, Deathridge, was charged with the actual knowledge of the existence of the conditional sales contract, upon which the plaintiff predicated its right to recover. The contention of the defendant to the effect that the plaintiff consented to the transfer and thereby waived its rights to recover under the conditional sales contract, is based upon the general doctrine that where the vendor in the conditional sales contract expressly or impliedly consents to the sale of the property by the vendee, he waives the lien, and the purchaser takes the title freed of any claim on the part of the vendor. This rule finds support in the authorities. Peasley v. Noble, 17 Idaho, 686, 107 P. 402, 27 L. R. A. (N. S.) 216.

It is analogous to the rule applied by our courts in connection with chattel mortgages to the effect that, where the mortgagee consents to a sale of the mortgaged property by the mortgagor, the purchaser receives the property free of any lien. Cudd v. Farmers Exchange Bank, 76 Okla. 317, 185 P. 521.

However, this doctrine is not inconsistent with a right of the vendor or mortgagor to retain his lien against or interest in the property in the hands of the purchaser or transferee, provided it is the intention of the parties such interest be retained and the intention is communicated to the transferee or purchaser. The rule appears in 11 C. J. page 625, in the following language:

"When a mortgagee's consent to a sale by the mortgagor is given on condition, the condition must be performed in order to render the consent a waiver of the mortgage lien as between the parties, or as against a purchaser who was a party to the condition or had knowledge thereof."

This doctrine may be properly applied to the case under consideration. The record discloses by the testimony of Mr. Phillips, the agent for the plaintiff who acted for the plaintiff in the sale of the pumps to Martin, and by the testimony of Mr. Martin, that at the time the conditional sales contract was executed, Phillips was advised that Mr. Martin intended to transfer the pumps to the defendant. The testimony of Martin also is to the effect that Mr. Deathridge, the agent of the defendant, was there at the time these negotiations were had and these statements were made. Notwithstanding the fact that such transfer was contemplated, the conditional sales contract retaining a lien by the plaintiff was executed: from which the logical conclusions may be drawn that it was the intention of all the parties that the vendor in the conditional sales contract intended to retain a lien upon the property in the hands of the transferee, until the purchase price thereof was paid. This being a logical deduction from the evidence, it is in support of the judgment and finding of the trial court.

The Supreme Court of Washington had a similar problem before it in the case of Alice Chalmers Mfg. Co. v. City of Ellensburg, 185 P. 811. In that case a contractor made the contract with the city to equip a power plant. He purchased certain machinery under a conditional sales contract from plaintiff with intention of installing it in the power plant of the city, and did so install it. In an action to recover this machinery from the city by the vendor under the conditional sales contract, the city urged that the vendor at the time the contract was executed knew the purpose for which the machinery was to be used and consented thereto and was thereby barred from recovery of the property. The court held that the plaintiff could recover for the reason that the city had actual notice of the conditional sales contract and the conditions thereof, before any of the equipment of the machinery went into its plant.

In connection with the case at bar, it is obvious that the consent, if any, to the trans-

ter and the execution of the conditional sales contract herein were simultaneous acts; in fact, the evidence indicates that the consent to the transfer was agreed upon before the conditional sales contract was actually executed.

If plaintiff intended to relinquish its title by consenting to the transfer by the vendee, it probably would never have executed a contract. At least, such is the reasonable inference.

We must presume that the trial court adopted this view of the evidence at the time the trial was had. We, therefore, conclude from an examination of the record that the judgment of the trial court is amply supported by the evidence and that the same should be in all respects affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, and OSBORN, JJ., concur. ANDREWS, BAYLESS, and WELCH, JJ., absent.

Note.—See under (1) 21 R. C. L. 438; R. C. L. Perm. Supp. p. 5056. (2) annotation in 72 A. L. R. 165; 24 R. C. L. 465; R. C. L. Pocket Part, title "Sales," § 759.