### SMITH v. BENSON et al.
No. 35131.

Supreme Court of Oklahoma.
Oct. 20, 1953.

·Bill Biggers, Wewoka, Tom Biggers, Ponca City, Geo. E. Defenbaugh, Shawnee, for plaintiff in error.

J. D. DeBois, Duncan, Oliver A. Witterman, Wichita, Kan., Brown & Verity, Oklahoma City, for defendants in error.

O'NEAL, Justice.

In this case it appears that on and prior to the 14th day of January, 1948, C. R. Virtue and Harry Culver, doing business as Gas and Oil Industries, hereinafter referred to as defendants, were the owners of an oil and gas lease covering 160 acres

of land located in Hughes County, Oklahoma; that defendants employed J. B. Smith, doing business as J. B. Smith Cardwell Service, hereinafter referred to as plaintiff, to do the work necessary to complete an oil well which had been commenced on the premises; that plaintiff started working on the well on the 15th day of January, 1948.

Defendants then discovered that they needed further casing and tubing with which to complete and bring in the well; they secured the necessary pipe and tubing from the Rock Island Oil and Refining Company under a written contract entered into on the 14th day of January, 1948, which contract we shall later refer to, and pursuant to this contract they delivered the pipe and tubing to defendants on the lease in question on the 15th day of January, 1948, and prior to the time plaintiff commenced working on the well. On said date defendants also moved a rotary drilling rig and necessary tools on the premises and plaintiff on that day commenced his work on the well pursuant to his contract with defendants. The plaintiff completed the well on April 2, 1948, and it proved to be a dry hole. Defendants were then indebted to him for labor performed in the sum of $9,201.34, upon which account defendants later paid the sum of $500, leaving a balance due in the sum of $8,701.34. Plaintiff thereafter in due time filed a laborer's lien under the provisions of 42 O.S.1951 § 144, against the leasehold estate and against all equipment thereon used in drilling the well, including the rotary drilling rig and tools and the pipe furnished by the Rock Island Oil and Refining Company, and on the 28th day of April, 1948, brought an action against defendants to recover this amount and to foreclose the lien on the leasehold and equipment.

Defendants made no defense to the action.

The Rock Island Oil and Refining Company, Inc., leave of court first having been obtained, filed a plea in intervention in which it claimed to be the owner of the pipe delivered on the premises and used in connection with the completion of the well. It claimed ownership under the written contract entered into between the parties above mentioned. This contract, insofar as here material, provides:

"Whereas, Parties of the Second Part are owners of certain oil and gas leases covering approximately 400 acres situated in Township 10 and 9 North, Range 9 East, Hughes County, Oklahoma, and

"Whereas, said Second Parties have drilled a well and are upon the sand upon a part of said property located as follows: Center North Half of Southwest Quarter of Northwest Quarter of Section Three (3), Township 9 North, Range 9 East, Hughes County, Oklahoma, same being known as the Gas and Oil Industries No. 1 B Thompson, and

"Whereas, Second Parties desire to purchase from First Party 3350 feet 7 inch 20 pound seamless casing at a price to be agreed upon between First Party and Second Parties and in consideration of the sale of such pipe by First Party to Second Parties, Second Parties are willing to give an option to First Party to purchase all oil produced from the above well for a period of three (3) years from this date and as long thereafter as Second Parties remain owners of said oil and gas leasehold estate upon which said well is located, same to be upon the following terms and conditions to-wit:

\*      \*      \*      \*      \*      \*

"In the event the No. 1 B Thompson is not a producer, Second Parties agree to pull all recoverable pipe at their expense, redeliver recoverable pipe in good condition to First Party and to pay First Party within 30 days from this date for all pipe they are unable to recover at a price mutually agreed upon between the parties hereto. In the event No. 1 B Thompson proves to be a producer, Second Parties agree to pay First Party for said pipe within 30 days from this date at the price agreed upon between said parties."

This contract was filed of record in Hughes County on the 8th day of April,

1948, or about six days after plaintiff had completed his work on the well. 60 O.S. 1951 § 319, provides:

"An instrument in writing leasing or lending or giving option to purchase any personal property, used in the digging, drilling, completing or equipping of an oil and gas well shall be void as against innocent purchasers or creditors of the lessee or bailee, unless the original instrument, or a true copy thereof, shall have been filed prior to the time the rights of any innocent purchaser or the creditors of the lessee or bailee accrue or come into being, in the office of the County Clerk of the county in which the lessee or bailee keeps or uses such personal property."

It is plaintiff's contention that since the contract was not filed of record until after plaintiff had completed his work the contract is void as to him since he was then a creditor of the lessee for whose benefit the pipe was furnished.

Rock Island Oil and Refining Company, Inc., intervenor, however contends that plaintiff had actual notice of the existence of its contract and the terms thereof prior to the time he performed any labor on the well, and the fact that the instrument had not been recorded is wholly immaterial and does not affect its right to recover the pipe and tubing under its plea of intervention.

Earl A. Benson and Wm. V. Montin also filed a plea of intervention claiming to be the owner of the drilling rig and tools used in connection with the drilling of the well. They claimed ownership under written lease executed sometime in 1946, whereby they leased drilling rigs and tools to defendants.

This instrument however had not been recorded in Hughes County at the time plaintiff commenced his work nor at the time he completed the well. These intervenors, however, also contend that plaintiff had actual notice that the drilling rig and tools belonged to them and that he received such actual notice on the 18th day of January, 1948, which was about four days after plaintiff commenced working on the well. It is conceded that he commenced working

the well on the 15th day of January, 1948. These intervenors also concede that plaintiff had a lien on the drilling rig and tools for work performed up to the 18th day of January, 1948, and the evidence shows that they paid him $500 for which plaintiff gave them credit on the account, but deny that he had a lien for work performed thereafter.

The trial court found that plaintiff had actual notice of the claim of ownership of Rock Island Oil and Refining Company in and to the pipe and tubing prior to the time he performed any labor on the well and entered judgment in favor of said intervenor for possession of said pipe and tubing.

There is some discussion in the briefs of the parties as to the nature of the contract entered into between Rock Island Oil and Refining Company and defendants. Plaintiff in his supplemental and answer brief argues that the contract constitutes an unconditional sale contract while intervenors contend it constitutes a contract of bailment. Counsel for plaintiff at the trial of the case conceded that the contract was one of bailment and the case was submitted to the trial court on this theory. We think the contract is one of bailment with an option upon the part of bailee to purchase the equipment furnished in the event the well upon completion proved to be a commercial well; otherwise, the equipment to be returned to the bailor, Rock Island Oil and Refining Company. The contention of plaintiff that the contract constitutes an unconditional sales contract cannot be sustained.

As to the intervenors Earl A. Benson and Wm. V. Montin the trial court found that they were the owners of the drilling rig and tools used by plaintiff in drilling the well in question but that plaintiff did not have notice that said tools were the personal property of said intervenors at the time he commenced his work at the location where the tools were located and used; plaintiff was personally advised and received notice thereof on January 18, 1948, that said tools and equipment were the property of said intervenors and entered

judgment in favor of plaintiff as against said intervenors decreeing plaintiff a lien against the drilling rig and tools for the four days' work performed by him prior to the time he received actual notice that the tools and rig belonged to said intervenors and entered judgment that upon the payment of said sum the plaintiff shall have no right, title interest or lien of any kind in and to the said drilling rig and tools but that said drilling rig and tools should be returned to said intervenors.

Plaintiff appeals and asserts that the judgment rendered is not sustained by sufficient evidence and is contrary to law.

It is conceded by both intervenors that they did not place their several contracts of record as provided by 60 O.S.1951 § 319, prior to the date plaintiff completed his work on the well.

Intervenor Rock Island Oil and Refining Company however contends that the evidence is sufficient to sustain the finding of the trial court that plaintiff had actual notice of the existence of its contract with defendants prior to the date he performed any work on the well and that the court therefore ruled correctly in rendering judgment in its favor and decreeing the return of the pipe and tubing to it.

In this respect plaintiff in substance testified he had a friend by the name of Lookabaugh, who told him that defendant Culver was trying to obtain pipe and tubing to be used in the completion of a well and was informed by him that the pipe and tubing might be obtained from the Rock Island Oil and Refining Company. He notified Culver of this conversation and advised him to get in touch with a Mr. Gossett who was an employee of the Rock Island Oil and Refining Company. Culver got in touch with Mr. Gossett by telephone as to whether Rock Island Oil and Refining Company had any pipe for sale. He was informed by Mr. Gossett that they occasionally would put out pipe and tubing reserving however a call on the oil but informed him that he was not authorized to make any contract without first submitting the question to his superior. On the 13th day of January, 1948, Mr. Gossett met plaintiff at plaintiff's office in Shawnee, Oklahoma, and had a conversation with plaintiff in which he informed him that Rock Island Oil and Refining Company might deliver some pipe if it could get call on the oil. At the request of plaintiff he called Mr. Martin, one of his superiors, over the telephone at Duncan, Oklahoma. The call was made at the request of plaintiff and placed at his office. After a conversation with Mr. Martin he told plaintiff that Rock Island Oil and Refining Company would be in a position to furnish Mr. Culver with pipe and casing in order to complete the well but the main purpose of its doing so would be to obtain a call on the oil and that it would not convey title to the pipe to Mr. Culver unless the well resulted in a commercial producer and if not the pipe and tubing was to be returned to the Rock Island Oil and Refining Company. Plaintiff denies that Mr. Gossett made such statement to him but he admits however that he knew that Rock Island Oil and Refining Company had entered into some contract for the purpose of furnishing pipe and tubing to complete the well but he had no knowledge as to the exact terms of the contract. He also testified he was interested in obtaining the pipe and tubing for defendant for the reason he wanted the job to complete the well. Thereafter, Mr. Culver met Mr. Martin in Duncan, Oklahoma, and the contract above was entered into. We think this evidence is sufficient to sustain the finding of the trial court that plaintiff did have knowledge of the existence of the contract between Rock Island Oil and Refining Company and defendants prior to the time he commenced work on the well. It was therefore immaterial that Rock Island Oil and Refining Company had not placed its contract of record until after plaintiff completed his work on the well. We have heretofore held that the purpose of the statute requiring an instrument relating to the conveyance of property to be recorded is to charge subsequent purchaser in good faith and creditors of the parties to the instrument with constructive notice thereof. Therefore if a creditor has actual knowledge of the existence of the instrument recording thereof is unnecessary as to him. Gibson Oil Co. v. Hayes Equipment

Mfg. Co., 163 Okl. 134, 21 P.2d 17, 88 A.L.R. 104; Ponder v. Beeler Motor Co., 186 Okl. 88, 96 P.2d 65.

It is also contended by intervenors, Earl A. Benson and Wm. V. Montin, that plaintiff had actual knowledge of the existence of their lease contract and the fact that they failed to place this instrument of record is therefore immaterial. It is however conceded that the plaintiff did not have actual knowledge of the existence of this contract until after he commenced working on the well and they also conceded that plaintiff had a valid labor lien claim against the equipment furnished by them for all work performed before he received actual notice of their claim. But that the lien did not attach to such equipment for work performed after he received actual notice thereof. The trial court so held and entered judgment in favor of these intervenors as above stated.

Plaintiff denied that he at any time had received actual notice of the existence of said intervenors' lease contract but further contends that even though he had received actual notice thereof after he performed his first work on the well his lien for labor attached to the equipment in question from the date he commenced work on the well and covered all labor performed up to the date the well was completed. We think this contention is correct.

We have heretofore held that liens for material and work are superior to liens or incumbrances subsequent to furnishing first items of material on date of performing first labor. Sherbondy v. Tulsa Boiler & Machinery Co., 99 Okl. 214, 226 P. 564; Graham Oil & Gas Co. v. Oil Well Supply Co., 128 Okl. 201, 264 P. 591. In Oklahoma Tool & Supply Co. v. Smith, 118 Okl. 228, 246 P. 1090, the court after referring to Section 7464, C.S.1921, 42 O.S.1951 sec. 144, held:

"* * * a person who performs labor in drilling an oil or gas well has a lien upon the tools, machinery, and appliances used in drilling the well, the same as upon the leasehold, oil, or gas pipe lines, etc., as therein provided, to secure his claim for the labor performed.

"Under the above statute, the lien for labor performed is superior to a chattel mortgage given before the commencement of the labor, but not filed for record till after the first labor was performed."

The above case was one to foreclose a laborer's lien for labor performed in connection with the drilling of an oil and gas well. He claimed a lien on tools and supplies used in drilling the well. He commenced work on the well on May 16, 1923, and completed the drilling of the well on August 28, 1923. The Tool and Supply Company held a chattel mortgage on the tools and equipment upon which claimant claimed the lien. The mortgage was executed by the oil and gas leaseholder on the 16th day of May, 1923, but was not placed of record until the 24th day of May or eight days after the date the first labor was performed on the well. The mortgagee conceded that the labor claim for lien was superior to its mortgage for labor performed prior to the date it placed its mortgage of record but contended that its mortgage was superior to the laborer's lien for all work performed subsequent to that date. The court held to the contrary and held that the laborer's lien attached from the date he performed his first work on the well and covered all work performed from May 16, 1923, the date he started working on the well until the well was completed. The above case and other cases above referred to are controlling and decisive of the question here presented.

The trial court erred in rendering judgment in favor of intervenors Earl A. Benson and Wm. V. Montin.

Judgment affirmed as to intervenor Rock Island Oil and Refining Company and reversed as to intervenors Earl A. Benson and Wm. V. Montin with instructions to enter judgment in favor of plaintiff as against said intervenors in accordance with the views herein expressed.

JOHNSON, V. C. J., and CORN, DAVISON and BLACKBIRD, JJ., concur.

ARNOLD, J., concurs in conclusion.

HALLEY, C. J., and WILLIAMS, J., concur as to affirmance and dissent as to reversal.

WILLIAMS, Justice (dissenting to that portion only of the majority opinion reversing the trial court.)

I do not believe plaintiff herein was entitled to a lien on the property of Benson and Montin for labor performed after plaintiff had notice that they owned the property in question.

The majority opinion cites holdings that "liens for material and work are superior to *liens or incumbrances* subsequent to furnishing first items of material on date of performing first labor." (Emphasis supplied.) I agree with this statement of law, and it is supported by the cases cited.

But in the case at hand, Benson and Montin were not asserting "liens or incumbrances". They were asserting *absolute ownership*. All of the cases cited in the majority opinion can be distinguished on the facts: in the Sherbondy case, the land sought to be subjected to the lien was sold by the debtor during the time the materials were being furnished; in the Graham case the same state of facts obtained; and in the Oklahoma Tool case, the property sought to be subjected to the lien was mortgaged before the labor was furnished, but the mortgage was not recorded till during the time the labor was being furnished.

I agree that plaintiff is entitled to a lien for labor performed before he had notice that the property belonged to Benson and Montin, but I am unable to find any statute or authority for the proposition that a lienee is entitled to a lien on property which the debtor does not own and has never owned, as to materials or labor furnished after being advised of such fact.

See Boston Cleaners & Dyers, Inc., v. Featherstone, 167 Okl. 519, 30 P.2d 874, 875, wherein the court said:

"One cannot create a contractual lien upon the property of another without the owner's assent, nor hypothecate it for his own indebtedness."

See also 53 C.J.S., Liens, § 5a, which reads in part:

"Lien laws have been said to rest on the cardinal principles that the *owner* of the property on which the lien is claimed has received some benefit or advantage by reason of services rendered or materials or supplies furnished and that the *owner* has contracted with some one, who thereby becomes his agent, to render such service or furnish such material or supplies." (Emphasis supplied.)

In the case at hand, it can hardly be said that Benson and Montin received any benefit by reason of plaintiff's services, or that there was any contractual relationship between them and plaintiff.

The position of the parties here is analogous to the situation which existed in Kissinger v. G. E. Burgher Oil & Gas Co., 174 Okl. 49, 49 P.2d 1049, wherein the court said:

"A drilling contractor may take his drilling equipment upon a leasehold for the purpose of drilling a well thereon under a contract with the owner of the lease without thereby subjecting such drilling equipment and materials to the lien claims of the lease owner's creditors under section 7464, C.O.S.1921."

See also Garber & Pulse, Inc., v. Gloyd, 168 Okl. 88, 31 P.2d 947, 949, wherein the court said in the body of the opinion:

" * * * It is the intention of the law to create a lien upon the *property of the contracting lease owner,* in favor of those having claims against the contracting lease owner." (Emphasis supplied.)

I do not think Benson and Montin in the case at hand should have their property subjected to the lien merely because they did not accompany their property to the lease, when, under the rules above cited, a drilling contractor who does so accompany his property is not liable.

I respectfully dissent.