CITY OF STILLWATER v. BLOCK 40 SOUTH



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CITY OF STILLWATER v. BLOCK 40 SOUTH

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CITY OF STILLWATER v. BLOCK 40 SOUTH
2021 OK CIV APP 29
Case Number: 118653
Decided: 06/11/2021
Mandate Issued: 07/14/2021
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2021 OK CIV APP 29, __ P.3d __

 

CITY OF STILLWATER, OKLAHOMA, a municipal corporation, Plaintiff/Appellee,
v.
BLOCK 40 SOUTH, LLC, an Oklahoma limited liability company, Defendant/Appellee,
and
STATE OF OKLAHOMA, ex rel. CORY WILLIAMS, Qui Tam Intervenor/Appellant.

APPEAL FROM THE DISTRICT COURT OF
PAYNE COUNTY, OKLAHOMA

HONORABLE STEPHEN R. KISTLER, TRIAL JUDGE

AFFIRMED

John Dorman, CITY ATTORNEY, Stillwater, Oklahoma, and
David L. Weatherford, BIRMINGHAM, MORLEY, WEATHERFORD &PRIORE, Tulsa, Oklahoma, for Plaintiff/Appellee,

Patrice D. Douglas, Johnny G. Beech, Courtney D. Powell, SPENCER FANE, LLP, Oklahoma City, Oklahoma, for Defendant/Appellee,

Stanley M. Ward,Geoffrey A. Tabor, WARD & GLASS, LLP, Norman, Oklahoma, for Qui Tam Intervenor/Appellant.

BARBARA G. SWINTON, CHIEF JUDGE:

¶1 Cory Williams appeals the trial court's order denying his Motion to Intervene to assert a qui tam claim on behalf of the State of Oklahoma in this declaratory judgment action between Plaintiff/Appellee the City of Stillwater (City) and Defendant/Appellee Block 40 South, LLC (Developer). In 2009, City conveyed real property conditioned on the grantee operating a children's museum thereon. In 2017, City's Council voted to release the condition and reverter clause in the deed. The grantee later conveyed the subject property to Developer. Williams asserted the release of the reverter clause was an unlawful transfer of City property because it was done without a vote of the people. City filed this action, seeking judgment declaring its release of the reverter clause was lawful, and Williams sought to intervene. Williams filed his qui tam written demand more than two years after City released the reverter clause, but within two years of the date the release was recorded. We find the trial court correctly determined that the qui tam statute of limitations had expired before Williams submitted his written demand and that Williams was not entitled to intervene on any other basis. We affirm.

¶2 The facts of this case are not in dispute. In 2009, City conveyed a tract of real property[1] ("the property") to Stillwater Children's Museum, Ltd. (SCM) by a Warranty Deed which included the following provision ("reverter clause") for title to revert to City if SCM did not operate a children's museum on the property:[2]

TO HAVE AND TO HOLD said described real property unto [SCM], its successors and assigns, forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages, and other liens and encumbrances of whatsoever nature, SUBJECT TO easements, rights-of-way, restrictive covenants and mineral conveyances and reservations of record, and PROVIDED that [SCM], or its successors or assigns operate a children's museum thereon. Should [SCM], or its successors or assigns fail or cease to operate a children's museum on said described real property, the estate vested in said grantee by this instrument shall terminate, and all title and interest to said described real property shall revert unto grantor CITY OF STILLWATER, OKLAHOMA.

SCM never operated a museum on the property because it was unable to obtain financing due to the reverter clause clouding its title. In April 2017, the City Council voted to release the reverter clause. The item was included on the consent docket at the City Council's April 17, 2017 regular meeting, and on the same day, the City executed a document titled "Release of Deed Restriction and Reversion Clause" (the release) which provided, in pertinent part:

WHEREAS, said deed restriction and reversion clause have not served the intended purpose and constitute a cloud on the title of said property.

NOW, THEREFORE, (City) does hereby forever release said deed restriction and reversion clause for the . . . property.

The Release was filed with the Payne County Clerk June 21, 2017.[3] SCM conveyed the property to Developer in April 2018. In July 2018, Williams emailed City employees asking about the release.

¶3 In June 2019, City initiated this case by filing a Petition for Declarative Relief against Block 40. City outlined the facts above and asserted it acted in accordance with its Charter when its Council voted to release the reverter clause. City noted its Charter provided that "the sale or lease of city property, real or personal, or the sale or other disposal of any interest therein the value of which property, lease or interest is more than" $250,000 required either a vote of the people or passage of a non-emergency ordinance by the Council along with notice to the public of its right to petition to have the sale or disposal put to a vote. City argued the value of the reverter clause was less than $250,000, citing authority that a reverter clause has only nominal value.[4] City also asserted it had no ownership in the property at the time its Council voted to release the reverter clause and it was under no obligation to exercise the right of reverter. City also contended SCM was not in default because the reverter clause did not establish a date by which SCM had to begin operating a museum, the property was not being used for any other purpose, and the reverter clause was the cause of the delay in constructing a museum. City sought a judgment declaring the reverter clause had only nominal value at the time of the release; City's Council acted within its legislative discretion in determining the reverter clause had only nominal value; and because the value of the reverter clause did not exceed $250,000, City's Council did not violate its Charter in voting to release it. To its Petition, City attached the Warranty Deed by which it conveyed the property to SCM in 2009; the real estate purchase contract from that transaction; the minutes of the Council meeting in which City voted to release the reverter clause; the Release of Deed Restriction and Reversion Clause signed by City's mayor April 17, 2017; the relevant provision of City's Charter; and the 2018 Warranty Deed by which SCM conveyed the property to Developer.

¶4 A week later, on June 21, 2019, Williams submitted a written qui tam demand signed by more than 100 registered voters pursuant to 62 O.S.2011 §373.[5]

¶5 Developer filed its Answer July 1, 2019. Developer asserted it obtained title to the property in an arm's length transaction in which it paid fair market value; its title was insured as free and clear of any reversionary interest; and whether or not City acted within its authority in releasing the reverter clause, Developer's title was not subject to rescission because it was a good faith purchaser for value. Developer asked the trial court to declare that Developer owned the property in fee simple, that City properly released the reverter clause, and that City's action did not constitute a cloud on Developer's title.

¶6 In August 2019, Williams filed his Motion to Intervene in this case. Williams asserted he was entitled to intervene of right to assert a qui tam claim, arguing he submitted a proper written demand and City failed to diligently present a justiciable controversy to recover the property. Williams argued City had failed to sufficiently allege a controversy because it did not include 1) the price it had paid for the property, 2) the price SCM paid for the property in 2009, and 3) the price Developer paid to buy the property from SCM after the release of the reverter clause. Williams argued those facts, as well as the fact the reverter clause was a cloud on the title, showed the reverter clause was an interest worth more than $250,000 and that City was therefore required to allow a vote of the people before releasing it. Williams averred he was also entitled to intervene under the equitable injunction statute, 12 O.S.2011 §1397, and the declaratory judgment statute, 12 O.S.2011 §1651.

¶7 City and Block 40 each filed responses opposing Williams's Motion to Intervene. City argued Williams submitted his qui tam written demand after the limitations period expired; Williams was not a proper qui tam intervenor because City was diligently prosecuting a justiciable controversy;[6] Williams was not entitled to seek an equitable injunction under 12 O.S.2011 §1397 because that statute does not apply to property transfers; and Williams was not entitled to intervene under the declaratory judgment statute because his qui tam claim was time barred.

¶8 In its objection, Developer argued Williams's challenge to the 2009 transaction in which City sold the property to SCM was not the subject of the current dispute and had not been challenged until Williams sought to intervene in this case. Developer further asserted the release was executed after being properly included on the Council's posted agenda and being voted on in an open meeting, and SCM continued to own the property for over a year following the release before conveying it to Developer. Developer also contended the statute of limitations expired on Williams's qui tam claim before he submitted the written demand and noted Williams had filed open records requests and knew of the release well before the expiration of the limitations period.

¶9 Following a hearing, the trial court entered its Journal Entry and Order Denying Motion to Intervene in January 2020.[7] The trial court found that for purposes of the qui tam statutes, the transfer of the property from City to SCM occurred when City executed the release of the reverter clause on April 17, 2017. The trial court found that Williams's written demand was made more than two years after that date and was therefore untimely. The trial court further found Williams was not entitled to intervene under the equitable injunction or declaratory judgment statutes.

¶10 Williams appeals. The right to intervene is governed by 12 O.S.2011 §2024. "Intervention is mandatory where a statute confers an unconditional right to intervene or where the intervener claims an interest in the matter and disposition of the action may, as a practical matter, impair or impede the ability to protect that interest. Otherwise, intervention is within the discretion of the trial court." Skrapka v. Bonner, 2008 OK 30, ¶12, 187 P.3d 202 (footnotes omitted). We review the denial of a motion to intervene as of right de novo. Bank of Commerce v. Breakers, L.L.C., 2011 OK CIV APP 45, 256 P.3d 1053. We will affirm the trial court's decision on permissive intervention where the record shows no abuse of discretion. Tulsa Rock Co. v. Williams, 1982 OK 10, ¶5, 640 P.2d 530.

¶11 When a governmental body, including a municipality, wrongfully transfers public property, a taxpayer may file a written demand, signed by a certain number of taxpayers, demanding the body file suit to recover property wrongfully transferred. 62 O.S.2011 §373.[8] If the governmental body does not then seek to recover the property, the taxpayer may file a qui tam proceeding to seek recovery of the property on behalf of the State. Id.

¶12 Qui tam statutes must be strictly construed. State ex rel. Twist v. Bailey, 1956 OK 103, ¶4, 295 P.2d 763. A taxpayer may only bring a qui tam action where there has been a transfer of money or property that involves a change of ownership or possession. State ex rel. Henricksen v. State ex rel. Corp. Com'n. of State of Okla., 2001 OK 89, ¶¶6-7, 37 P.2d 835. Where a public body has sought judgment declaring the legality of a transfer, a taxpayer has an interest sufficient to allow intervention only where the taxpayer has shown the governmental body has failed to diligently prosecute the action to recover the property alleged to have been wrongfully transferred. Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57, ¶14, 270 P.3d 113. A public body may prevent intervention by a taxpayer where the public body has diligently presented the taxpayer's claim of illegality in a declaratory judgment action. Id. "Taxpayers may intervene in an action brought by a public body only if the public body fails to respond to a written demand with action taken in good faith. Whether that burden has been met is left to the sound discretion of the trial court." City of Oklahoma City v. Oklahoma City Urban Renewal Authority, 1999 OK 71, ¶17, 988 P.2d 901 (citations omitted). The qui tam taxpayer's burden, on intervention in a public body's declaratory judgment action, "is to show the inadequacy of the presentation of the controversy to the court by the public body. An intervening taxpayer 'must show the insufficiency of the declaratory judgment petition as a condition precedent to a successful intervention in the declaratory judgment proceeding.'" Bass Pro, supra, 2011 OK 1, at ¶25, quoting State ex rel. Wright v. Okla. Corp. Com'n, 2007 OK 73, ¶58, 170 P.3d 1024.

¶13 Williams first argues the trial court erred in finding the qui tam limitations period had expired before he submitted his demand. As noted above, an essential prerequisite for bringing a qui tam action is submission of a written demand signed by at least 100 taxpayers. 12 O.S.2011 §373. Following a 1993 decision by the Oklahoma Supreme Court finding there was no limitations period for qui tam claims, in 1994 the Legislature added a limitations provision to the qui tam statutes.[9] A taxpayer may only file a qui tam action if his Section 373 written demand was submitted to the governmental body within two years of the challenged transfer of public property:

Civil actions filed by taxpayers for the recovery of real or personal property can only be brought if the written demand upon the proper officers is made by the required resident taxpayers within two (2) years of the transfer of the property, and the civil suit is filed within six (6) months following the refusal, failure, or neglect of the proper officers to act upon the written demand.

62 O.S.2011 §374. The Oklahoma Supreme Court has held that this provision operates as a statute of limitations. Henricksen, supra, at ¶¶10-13.

¶14 City's Council voted to release the reverter clause and City's mayor executed the release April 17, 2017. Williams filed his written demand more than two years later on June 21, 2019. Williams urges that the limitations period began June 21, 2017, the date that the release was filed with the Payne County Clerk. Williams notes his written demand was filed exactly two years after the release was filed with the county clerk. He argues the transfer date for real property is the date of recording and his demand was therefore timely. By its terms, Section 374 applies to transfers of real and personal property, but it does not make a distinction between them nor define the date of transfer for purposes of the limitations period.

¶15 In his Brief, Williams agrees the date the release was executed, April 17, 2017, was the date the release was effective as to City and SMC, citing 16 O.S.2011 §15. Williams contends the date of recording was the date the release was effective as to third parties and therefore is the date of transfer for purposes of §374. Williams's primary reasoning for this argument is that a public body could simply conceal a transfer by failing to record it until two years have passed and thereby prevent any qui tam challenges to unlawful transfers. We find this argument unpersuasive because a public body could do the same with money or personal property, for which there is no recording system. The actions of public bodies must be made in open meetings, and it is undisputed the reverter clause release was voted on in an open meeting and executed the same day. Indeed, Williams does not argue he learned of the transfer by virtue of it being recorded. Williams began emailing City about the release in July 2018. "(T)he purpose of the statute requiring an instrument relating to the conveyance of property to be recorded is to charge subsequent purchaser(s) in good faith and creditors of the parties to the instrument with constructive notice thereof. Therefore if a creditor has actual knowledge of the existence of the instrument recording thereof is unnecessary as to him." Smith v. Benson, 1953 OK 298, ¶16 , 262 P.2d 438, 442-3, citing Gibson Oil Co. v. Hayes Equipment Mfg. Co., 1933 OK 142, 21 P.2d 17, 163 Okl. 134, and Ponder v. Beeler Motor Co., 1939 OK 510, 96 P.2d 65, 186 Okl. 88.

¶16 "In order to avoid judicially imposing a different meaning from that the Legislature intended, courts will not place a strained construction on the plain words of a statute. General words in a statute must receive a general construction, unless restrained, explained, or amplified by particular words. A statute will be given a construction, if possible, which renders every word operative, rather than one which makes some words idle and meaningless." Stump v. Cheek, 2007 OK 97, ¶14, 179 P.3d 606 (footnotes omitted). The plain language of Section 374 requires a written demand to be submitted within two years of the date of transfer. Williams's contention that the date of recording is the date of transfer would require adding words to the plain language of the statute and would ignore the long-standing rule that qui tam statutes must be strictly construed.[10] In this case, the date of transfer was April 17, 2017. Accordingly, Williams's June 21, 2019 written demand was untimely and the trial court properly denied his Motion to Intervene on that basis.

¶17 Because we find Williams was not entitled to intervene due to his untimely demand, we need not consider the merits of his qui tam claim. Accordingly, whether the release of the reverter clause involved a change of ownership or possession so as to constitute a transfer under Section 374; whether City complied with its charter in releasing the reverter clause; or whether City's declaratory judgment action presented a judiciable controversy are irrelevant to our review of the denial of intervention. The fact that City filed its declaratory judgment action before Williams submitted his written demand does not alter our finding that Williams's demand was untimely based on the date of the challenged transfer.

¶18 Williams next asserts the trial court erred in denying his Motion to Intervene under 12 O.S.2011 §1397. That statute provides:

An injunction may be granted to enjoin the enforcement of a void judgment, the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction. An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance. The petition therefor shall be verified by the district attorney of the proper county, or by the Attorney General, upon information and belief, and no bond shall be required, but the county shall, in all other respects, be liable as other plaintiffs.

The release of the reverter clause is not a judgment, tax, charge, or assessment, nor is it a proceeding to enforce any of those. By its plain language, Section 1397 does not apply in this case. The authority on which Williams relies for this argument, Tulsa Indus. Auth., supra, involved a challenge to ad valorem and sales taxes being used to fund private development. The Oklahoma Supreme Court noted that the equitable injunction is generally available where there is no other statutory remedy. 2011 OK 57 at ¶¶23-25. In that case, the intervenors' qui tam claim failed not because of the statute of limitations but because the qui tam provisions do not apply to transfers by public trusts. 2011 OK 57 at ¶¶20-22. In this case, the qui tam procedure would have been available to Williams but for the expiration of the limitations period. Section 1397 does not supplant statutory remedies. Id. at ¶25. Because the facts of Tulsa Indus. Auth plainly come within the terms of Section 1397, then to the extent language in that case appears to expand the equitable injunction statute to embrace any expenditure of public funds, we find those statements are dicta. Because City's decision to release the reversion clause does not come with the terms of Section 137, we find the trial court did not err in denying intervention under this statute.

¶19 Williams's final argument is that the trial court erred in denying his Motion to Intervene under the declaratory judgment statute, 12 O.S.2011 §1651. Williams has not cited authority, other than incorporating by reference his earlier qui tam arguments, for this assertion of error. We agree with the trial court that because Williams's qui tam demand was out of time, he was not entitled to intervene in the declaratory judgment action. See Conoco, Inc. v. State Department of Health, 1982 OK 94, ¶18, 651 P.2d 125 (declaratory judgment quest does not extend the trial court's jurisdiction).

¶20 The record shows the trial court did not err in denying Williams's Motion to Intervene and we AFFIRM.

PEMBERTON, P.J., and BELL, J., concur.

FOOTNOTES

[1] Described as Lots 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23 of Block 40, Original Town, in Stillwater.

[2] A deed which conveys property conditioned on an institution being located thereon is a grant with a condition subsequent. Mead v. Ballard, 74 U.S. 290, 19 L.Ed. 190, 7 Wall. 190 (1868).

[3] In his Brief, Williams refers to this document as a deed, but nothing in the record indicates a new deed was executed or recorded in 2017.

[4] The authority on which City relied holds that in eminent domain proceedings, a right of reverter has only nominal value. See Midwestern Developments, Inc. v. City of Tulsa, 374 F.2d 683 (10thCir.1967) ("The general rule applicable to condemnation of land held in defeasible fee simple is that the entire award is apportionable to the fee owner and the holder of the right of entry or possibility of reverter is entitled to nominal damages only. . . . This is so at least where there is no indication that the future interest will imminently become possessory as a result of voluntary acts.").

The Tenth Circuit Court of Appeals earlier quoted the following provision:

When land which had been conveyed in fee to its present holder upon condition that it be devoted to a certain use is taken by eminent domain for a different use, whether the original conveyance is regarded as in trust for the grantor, as a determinable fee, or as a grant upon condition subsequent, the grantor is not entitled to compensation. As the interest of the grantee is a fee simple, the entire estate is in him, and the rights of the grantor, whatever they may be called, and however they might be enforced in equity in case of an unlawful use of the property, are not an estate or interest in the land, and so are not property in the constitutional sense. . . .

. . . Wherever the gift is of a fee, there cannot be a remainder, although the fee may be . . . qualified or determinable . . . . When once granted, there is nothing left in the donor but a possibility or right of reverter which does not constitute an actual estate.

Woodville, Okla. v. U.S., 152 F.2d 735, 738 (10thCir.1946), quoting American Jurisprudence, Vol. 18, Sec. 231, Eminent Domain, Vendor and Purchaser, and Lyford v. City of Laconia, 75 N.H. 220, 72 A. 1085, 1089 (1909).

[5] For the terms of Section 373, see note 8, infra.

[6] Citing City of Broken Arrow v. Bass Pro Outdoor World, LLC, 2011 OK 1, 250 P.3d 305.

[7] The Journal Entry consists of one paragraph, in which the trial court directed that "the Motion to Intervene is denied as set forth more fully in the transcript of the hearing, portions of which are attached hereto." That page is signed by the trial court. Attached to the Journal Entry are five pages of transcript, in which the trial court explained its decision.

[8] That section provides, in pertinent part:

Upon the refusal, failure, or neglect of the proper officers of the . . . city, . . . after written demand signed, verified and served upon them by a number of registered voters of the state or such county, city, town, or school district equal to one hundred (100), or two and one-half percent (2 1/2%) of the registered voters living within the . . . city, . . . to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the . . . city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers . . ., any resident taxpayer . . . after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers . . . might institute and maintain for the recovery of such property; and the state or such county, city, town or school district shall in such event be made defendant.

[9] See State ex rel. Schones v. Town of Canute, 1993 OK 90, 858 P.2d 436 (overruled by statute as noted in State ex rel. Henricksen, supra, 2001 OK 89 at ¶¶12-13).

[10] Qui tam statutes are penal in nature and therefore require strict compliance on behalf of the public body alleged to have violated the law in transferring public property. Tulsa Indus. Auth., supra, 2011 OK 57 at n.7.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2011 OK CIV APP 45, 256 P.3d 1053, BANK OF COMMERCE v. BREAKERS, L.L.C.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1939 OK 510, 96 P.2d 65, 186 Okla. 88, PONDER v. BEELER MOTOR CO.
Discussed at Length
 1993 OK 90, 858 P.2d 436, 64 OBJ 2091, State ex rel. Schones v. Town of Canute
Discussed
 1953 OK 298, 262 P.2d 438, SMITH v. BENSON
Discussed
 1956 OK 103, 295 P.2d 763, STATE ex rel. TWIST v. BAILEY
Discussed
 2001 OK 89, 37 P.3d 835, 72 OBJ 3068, STATE ex rel. HENRICKSON v. STATE EX. REL. CORPORATION COMMISSION
Discussed
 1933 OK 142, 21 P.2d 17, 163 Okla. 134, GIBSON OIL CO. v. HAYES EQUIP. MFG. CO.
Discussed at Length
 2007 OK 73, 170 P.3d 1024, STATE ex rel. WRIGHT v. OKLAHOMA CORPORATION COMMISSION
Discussed
 2007 OK 97, 179 P.3d 606, STUMP v. CHEEK
Discussed
 2008 OK 30, 187 P.3d 202, SKRAPKA v. BONNER
Discussed
 2011 OK 1, 250 P.3d 305, CITY OF BROKEN ARROW v. BASS PRO OUTDOOR WORLD, L.L.C.
Discussed at Length
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSA
Discussed at Length
 1982 OK 10, 640 P.2d 530, Tulsa Rock Co. v. Williams
Discussed
 1982 OK 94, 651 P.2d 125, Conoco, Inc. v. State Dept. of Health
Discussed
 1999 OK 71, 988 P.2d 901, 70 OBJ 2376, City of Oklahoma City v. Oklahoma City Urban Renewal Authority
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2024, Intervention
Cited
 12 O.S. 1397, Void Judgment, Illegal Tax or Nuisance May Be Enjoined - Petition - No Bond Required
Discussed at Length
 12 O.S. 1651, Determination of Rights, Status or Other Legal Relations - Exceptions
Discussed
Title 16. Conveyances
 Cite
Name
Level

 16 O.S. 15, Necessity of Acknowledgment and Recording as to Validity - Acknowledge and Record as Condition for Judgment Lien to be Binding against Third Persons
Cited
Title 62. Public Finance
 Cite
Name
Level

 62 O.S. 373, Taxpayer May Institute Suit on Failure of Officers
Discussed
 62 O.S. 374, Civil Actions Filed by Taxpayers
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA