## EL RENO FOUNDRY & MACHINE CO. v. WESTERN ICE CO. (TRULOCK, *Intervener;* CHICAGO, R. I. & P. RY. CO., *Garnishee*).

No. 5567.    Opinion Filed December 14, 1915.

(153 Pac. 1107.)

1.  APPEAL AND ERROR—Theory of Case—Change on Appeal. The record examined, and **held** that defnedant in error did not, in this court. change the theory of his case.

2.  GARNISHMENT—Assignment—Priority of Rights. In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract. Section 2894, Rev. Laws 1910.

3.  SAME. An assignment in writing of a debt owing to a defendant, free from fraud, and for a valuable consideration, and prior to the service of a writ of garnishment on such debtor of defendant, gives such assignee a right to the amount of the debt, which is superior to the claim of the garnishing plaintiff.

(Syllabus by Brewer, C.)

*Error from County Court, Canadian County;*
*W. A. Maurer, Judge.*

Action by the El Reno Foundry & Machine Company, a corporation, against the Western Ice Company, a corporation, wherein R. S. Trulock, trustee, intervened, and the Chicago, Rock Island & Pacific Railway Company, a corporation, was garnishee. Judgment for intervener, and from an order directing that money garnished be paid over to him, plaintiff brings error. Affirmed.

*E. E. Blake* (*B. D. Shear* and *A. T. Boys,* of counsel), for plaintiff in error.

*M. D. Libby,* for defendant in error Trulock.

Opinion by BREWER, C. This suit was filed in the county court of Canadian county by plaintiff in error, El Reno Foundry & Machine Company, a corporation, against Western Ice Company, a corporation, on an open account, for labor in repairing machines and machinery, and for furnishing supplies and material therefor, in the sum of $450. At the same time, a writ of garnishment was obtained against the Chicago, Rock Island & Pacific Railway Company, requiring it to answer, touching its indebtedness to the ice company. Thereafter judgment was rendered against the ice company for the amount claimed. The writ of garnishment was served upon the garnishee railway company on September 11, 1912. In response thereto, it filed its answer on October 17, 1912, in which it admitted it had received ice from defendant company to the value of a large sum, against which it had an offset for freight charges, but alleged that it was not indebted to defendant company in any sum whatever, for the reason that on the 9th day of Septem-

ber, 1912, it had been served with a copy of a written as-
signment of all the sums due to defendant for ice, and
that same was executed by defendant to R. S. Trulock as
trustee, and directed the garnishee to pay all sums in its
hands to said trustee; and that inasmuch as said assign-
ment was prior in point of time to the service of the writ
of garnishment, it was not indebted in any sum to defend-
ant; and that it ought to go hence with its costs. A copy
of the assignment was attached to and made a part of the
answer. Thereafter R. S. Trulock was permitted to in-
tervene in the suit, and did so, claiming the fund that
had been garnished. To this plea of intervention, plain-
tiff foundry company filed its answer and gave notice of
issue raised on the answer of the garnishee. Thus it
will be seen that the issue involved here arises out of the
plea of intervention, the answer thereto, and intervener's
reply, and narrows down to a contest between these par-
ties as to which of them has the superior right to the
fund, which, in the meantime, had been paid into court.
The written assignment set out by both the garnishee
and intervener, after reciting the fact that the Western
Ice Company had been furnishing ice to the garnishee at
a stipulated price, and was under contract to continue
to so furnish it, and that the garnishee was indebted to
it therefor in the sum of $3,002.70, less certain freight
charges, and that the said ice company was indebted to
Trulock, as trustee under the terms of a certain deed of
trust, and that $9,000 of such indebtedness had accrued
and was unpaid, contains the following language:

"* * * And that the said Western Ice Company
does hereby assign to the said R. S. Trulock, as trustee
aforesaid, all sums now due or to become due to it under
and by virtue of said contract, from the said Chicago,

Rock Island & Pacific Railway Company, for ice heretofore or hereafter furnished to said railway company, in performance of said contract, which sum or sums shall be applied to the amount thereof as paid, in payment of said defaulted interest and installments of principal now due and payable under the terms of said trust deed and the bonds hereinbefore mentioned, and which application the said R. S. Trulock, as such trustee, hereby agrees to; and the Chicago, Rock Island & Pacific Railway Company is hereby authorized and directed to make all payments of sums now due or to become due to the Western Ice Company, under the terms of said contract for supplying ice as aforesaid, to the said R. S. Trulock as trustee aforesaid, less the amount of freight charges now due from the said Western Ice Company to said Railway Company."

At a hearing in the county court, judgment was rendered in favor of the intervener, holding that his right, under the assignment, to the fund in court was superior to the right of the plaintiff, under its writ of garnishment, and directing that the money be paid to the intervener. To reverse this order this appeal is prosecuted.

The record in this case is large, and excellent briefs have been presented on each side of the case. The briefs of the parties, however, are built upon fundamentally different premises. This, upon a very careful examination of the record, in our judgment, grows out of the fact that the intervener, in the preparation of his intervention, overpleaded his case by setting up at least two separate and distinct reasons why he thought his right to the fund in court was superior to plaintiff's. Therefore the main part of our work has been to ascertain from the record—and it has taken a complete examination of it—just what claim intervener set forth and relied upon in

the lower court as giving him a right to the fund. This is all-important; for, as we view the case, its determination practically decides it for the one or the other.

This condition arose out of the fact that intervener set up as his first claim to the fund the assignment of it to him by defendant ice company, dated September 4, 1912, a copy of which assignment was served on the railway company September 9, 1912, prior to service of the writ of garnishment. Had intervener stopped with this claim in his pleadings very little would have been required of us, but he saw fit to go further, and in paragraphs 2 and 3 of his intervention (which he styled an answer) appears to make a claim to the money through the operation of a trust deed to secure a large bond issue, executed by the ice company to him as trustee, and under the terms of which after-acquired property and all rents, profits, and incomes of the ice company were embraced within the lien created by the trust instrument; and, as an aid to this claim, intervener further set up that in some other suit pending in the federal court, involving an attempt to put the ice company into bankruptcy, the assignment involved here had been urged as a ground of bankruptcy, but that the federal court had held that it was not, for the reason that the sums due for ice were going to the intervener under the income provision of the trust deed, and that the written assignment was a mere aid to the trustee in securing the funds due for ice, and which he was entitled to under the trust deed. Said two claims to the fund in court have provided widely different premises upon which to build the opposing arguments. The defendant in error, the intervener, therefore contends that he claims under the written assignment of the fund by the party to whom it was owing,

at a time and in a way that was lawful, and all of which was prior to the service of the writ of garnishment, and that therefore, these facts being admitted, or shown without any conflict in the evidenc, he prevailed rightly below, and is bound to prevail here.

On the other hand, plaintiff in error starts with the premise that the intervener claimed the fund by virtue of and under the terms of the trust deed, a provision of which gave a lien on all after-acquired property, including rents, revenues, profits, and incomes, and, starting with this as a premise, very skillfully, and perhaps correctly, argues that the mortgage on income, where, as here, the mortgagor was left in possession of the property, and under the duty of operating and maintaining same, extends only to such net income as remained after the current expenses of operation, repairs, etc., had been met, and that as said trust deed specifically provides that the mortgagor, who should remain in possession, should repair, replace, and keep in good condition the machinery and apparatus of the ice plant, there was in fact a contractual dedication by the parties of such of the gross income as might be needed to the very purpose of repairing and keeping the machinery and apparatus of the plant in a working condition, and that under this situation, the lien created by the service of the writ of garnishment would be superior to intervener's claim under the mortgage.

Closely related to this claim, and in a manner dependent upon it, the further contention is put forward that these repairs and supplies furnished the ice company were absolutely necessary to keep it a going concern, and that therefore they preserved the mortgage

security, and that the doctrine of an equitable lien, sometimes allowed by the courts as superior to an underlying mortgage (*Fosdick v. Schall*, 99 U. S. 235, 25 L. Ed. 339, and later cases), was applicable and should be resorted to. These claims of plaintiff, were the premises out of which they grow justified, would present very interesting, although somewhat involved, propositions; but we do not think the premises assumed are correct. We have searched this record more than once, almost hoping to find them so; but they are not.

While, as we said before, we think intervener overpleaded his case, when it came to trial he did not overtry it. He introduced the intervener as a witness, and confined his proof to a showing, through the defaulted interest and other payments due under the mortgage, a lawful consideration for the assignment of the ice debt, and that in a foreclosure suit under the mortgage the ice debt had been treated as a cash payment, and was applied as such to the judgment taken, foreclosing the properties. He then introduced the assignment, testified to his ownership and rights to the fund assigned, and rested his case. Later on, in the production of his proof, the plaintiff sought to go into the matter of the adjudication in the federal court, upon the assumption, still held by it, that intervener was claiming under the mortgage. At this point objection was interposed in the following language:

"We object to the introduction, and to all that portion of the answer which has heretofore been withdrawn, to wit, paragraphs 2 and 3."

Paragraphs 2 and 3, as will be recalled, are the paragraphs setting up a claim to the fund in court by

virtue of the mortgage; but, independent of this, it is quite certain that the only claim put forward by intervener at the trial, and here, is the claim under the written assignment of the fund. Having no doubt of this, there is very little else to decide.

Section 2901, Rev. Laws 1910, authorizes a debtor to prefer one of his creditors, by paying or securing by mortgage of either real or personal property to such creditor, etc. Section 2894, *Id.*, provides:

"In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract."

This court, in *First State Bank of Durant v. Smith,* 43 Okla. 320, 140 Pac. 150, held:

"In the absence of statutory provisions to the contrary, a debtor, though in failing circumstances, may prefer one or more of his creditors to the exclusion of the rest, and such preference is not in itself sufficient to sustain an attachment upon the ground that the defendant has disposed of his property with the intent to defraud, hinder, or delay his creditors."

See, also, *Kentucky Bank & Trust Co. et al. v. Pritchett et al.,* 44 Okla. 87, 143 Pac. 338.

Here the debtor assigned a sum due it to a creditor for a lawful consideration on September 4, 1912. A copy of the assignment was served on the corporation owing the debt September 9, 1912. This suit was not filed, nor was the garnishment writ served, until September 11, 1912. Plaintiff must depend upon the lien created by the service of the writ. The ownership of the debt having passed out of defendant and into intervener prior to such service, there was nothing owing defendant to which

the lien could attach. In *Market Nat. Bank of Cincinnati v. Raspberry,* 34 Okla. 243, 124 Pac. 758, it is said:

"A plaintiff who causes a writ of garnishment to be served upon the debtor of the defendant is not a purchaser for value, and therefore cannot take the debt as against a prior assignee thereof for value, who has not given notice to the debtor of his assignment."

This leads us to conclude that the rights of the assignee of the debt are superior to the rights of the garnishing creditor, and that the court did not err in so holding.

The judgment should be affirmed.

By the Court: It is so ordered.