## OKLAHOMA STATE BANK OF ADA et al. v. CRUMLEY et al.

No. 19620. Opinion Filed Nov. 11, 1930.

McKeown & Green, for plaintiffs in error.

George Trice and Denver N. Davison, for defendants in error.

HEFNER, J. In 1918, D. A. Crumley, the defendant in error herein, owned an undivided one-half interest in 43.53 acres of land in section 27, township 5 north, range 8 east, upon which the Plains Oil & Gas Company held an oil and gas lease. J. B. Gray at the same time was the owner of all of the fee in 26.68 acres in section 27, upon which the Carter Oil Company held an oil and gas lease. Gray and Crumley entered into a contract wherein they would participate in the royalties accruing from each of said oil and gas leases. The contract was as follows:

"This agreement made and entered into this 28th day of March, 1918, by and between D. A. Crumley of Allen, Pontotoc county, state of Oklahoma; Witnesseth: that D. A. Crumley is the owner of an undivided one-half interest in the fee-simple title in and to the following described real estate situated in Pontotoc county, state of Oklahoma, to wit: Lot 1 containing 16.94 acres and lot 5 containing 26.59 acres, all in section 27, township 5 north, range 8 east, containing in all 43.53 acres more or less; and whereas, said lands have been leased for oil and gas mining purposes to Plains Oil & Gas Company, bearing the date of___, ___19___, and being duly recorded in the office of county clerk of Pontotoc county, Okla., in book____ of Miscellaneous Records thereof, at page____, and, whereas, said oil and gas lease above mentioned and described, contains among its conditions a provision that the lessor shall receive as royalty therefrom the equal one-eighth part of all oil produced and saved from the leased premises, the sum of $_____ per annum, each year in advance for the gas from any well where gas only is found, while the same is being used off the leased premises, and the sum of $_____ each year in advance for the gas from any oil well while the same is being used off the leased premises, and the sum of $_____ each year in advance for the gas from any oil well while the same is being used off the premises, which said oil and gas lease is hereby referred to and made a part hereof in so far as its provisions concerning royalties are concerned, as fully and to the same extent as if set forth herein verbatim, and whereas, J. B. Gray is the owner of the fee-simple title in and to the following described real estate situated in Pontotoc county, state of Oklahoma, to wit: Lot 6 of section 27, township 5 north, range 8 east, containing in all 26.68 acres more or less, and whereas, the Carter Oil Company is now the owner and holder of an oil and gas mining lease thereon, said lease having been executed to_____on the day of_____ and by said lessee assigned to the Carter Oil Company, which said lease is duly recorded in the office of the county clerk of Pontotoc county, state of Oklahoma in book _____of the Miscel'aneous Records thereof at page_____and whereas, said oil and gas lease above mentioned and described contains among its conditions a provision that the lessor shall receive as royalty therefrom the equal one-eighth part of all oil produced and saved from the leased premises; the sum of $_____ per annum each year in advance for the gas produced from any well where gas only is found, while the same is being used off the leased premises and the sum of $_____ each year in advance for the gas from any oil well while the same is being used off the leased premises, which said

oil and gas lease is hereby referred to and made a part hereof in so far as its provisions concerning royalties are concerned, as fully and to the same extent as if set forth herein verbatim, and whereas, the parties thereto are desirous of pooling their interest in the royalty under each of said oil and gas mining leases. Now, therefore, it is understood and agreed by and between the parties hereto that the royalty, derived from production only, arising under the leases herein described shall be deposited in the First State Bank of Allen, Okla., by the person receiving the same to the joint account of D. A. Crumley and J. B. Gray and on the 1st day of each month next following the month in which royalty is so deposited in said bank, said bank shall divide said sum into two equal parts and place said one-half to the credit of each of said parties, that is to say, D. A. Crumley one-half of the entire sum so deposited, and J. B. Gray one-half of the entire sum so deposited. It is distinctly understood and agreed that no time limit shall ever be set as to the time in which production shall be commenced on any of said tracts of land, and that the cancellation of any one or more of said leases described shall not affect this agreement, and each of said parties shall be entitled and shall receive, as provided in this agreement one-half of all royalties received from production only, arising under said lease contracts. Witness the hands of the parties hereto the day and year first herein written."

After execution of the contract, Gray executed a mortgage in favor of the Conservative Loan & Trust Company for the sum of $1,000 upon the lands owned by him. The loan company would not approve the title until Crumley, in writing, waived his interest in favor of the company. This was done. The mortgage was assigned to Ellen J. Slagg. Gray made default in payment and she brought suit to foreclose the mortgage.

After the recording and delivery of the mortgage to the loan company, Gray executed a second mortgage in favor of the Oklahoma State Bank, of Ada. In the meantime, J. W. McCorkle, one of the plaintiffs in error, obtained a personal judgment against Gray. Both the Oklahoma State Bank and J. W. McCorkle were made defendants in the suit to foreclose the Slagg mortgage.

The mineral rights of Crumley covered lot 6 in section 27, and as he had waived his mineral rights in favor of the loan company, there was no issue to be tried between him and Slagg. But the matter went to trial as between the Oklahoma State Bank, J. W. McCorkle, and Crumley. After hearing the evidence the court held that Crumley's contract was superior to the mortgage of the bank and the judgment of McCorkle. The bank and McCorkle have brought the case here for review.

It was agreed that the case should be submitted to the trial court for its determination as to whether or not the royalty contract held by Crumley was a valid contract, and if valid, as to whether it is prior to the mortgage of the bank and the judgment lien of McCorkle. The appellants contend that the contract was invalid for the following reasons:

(1) That it is too indefinite and too vague.

(2) If it is to be construed as a mineral grant, that is, conveying the oil, gas, and mineral rights in and under the lands described, that it is void by reason of not conferring the right upon the holder of ingress and egress to go upon the land and explore for oil, gas, and other minerals.

(3) That it is improperly acknowledged, and therefore not entitled to be recorded under our recording act, and thereby failed to give constructive notice to the defendants.

After the contract between Gray and Crumley had been entered into, production was found on both pieces of property, and at the trial of the case the properties had been producing for eight or ten years and the money had been deposited in the bank and divided between them in accordance with the agreement. The appellants contend that the contract is indefinite because the court cannot determine the amount of royalty to be paid. The contract between Gray and Crumley made the oil and gas leases a part of the contract. The leases each provided that one-eighth of the oil should be paid to the lessor. Besides this, the land had been producing oil for eight or ten years and the royalty had been divided between the parties as it was produced. The contract was definite and certain in this respect.

It is next contended by the appellants that the contract, if upheld as a valid contract, is nothing more than a royalty or mineral grant, and that if it should be held to be a mineral grant, it is contended that it is void because the right of ingress and egress is not specifically reserved in the contract. We do not see how this question can arise in this case, because the properties both had oil and gas leases on them at the time the contract was entered into. The lessees under each lease entered upon the

premises and discovered oil and for a period of several years the royalty was paid by the lessees in the respective leases in accordance with the agreement. The question of the right of ingress and egress cannot arise until Crumley undertakes to exercise that right and the right is challenged by some proper person. Where the contract was performed with the consent of all parties, that question was waived.

The last contention of the appellants is that the contract was improperly acknowledged and therefore not entitled to be recorded under our recording act and thereby was not constructive notice to the defendants. It is true that the contract was not properly acknowledged and it was not entitled to be recorded and the fact that it was spread upon the records did not give constructive notice to the defendants. In this connection, however, the trial court found that the bank had actual notice of the contract and the evidence is sufficient to support its findings in this respect. The law is well settled in this jurisdiction that one who purchases or takes an interest in land with knowledge of outstanding rights claimed adversely to his vendor and when he has such actual notice, he takes his interest in the land subject to the rights of the holder of the outstanding claim which is held adversely to the purchaser's vendor. Since the bank had actual notice, the fact that the leases were improperly acknowledged becomes immaterial.

Was J. M. McCorkle's judgment lien superior to Crumley's rights in the land? McCorkle was a judgment creditor of Gray's. Crumley had been the owner of his interest in the land several years before the date of McCorkle's judgment against Gray. In the case of J. I. Case Threshing Machine Co. v. Walton Trust Co., 39 Okla. 748, 136 Pac. 769, it was said:

"The lien of a judgment is subject to every equity that exists against the land in the hands of the debtor, at the time of docketing the judgment, and the court of chancery will protect the equitable rights of the third person against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate."

Gray's right in this land was subject to the contract of Crumley. McCorkle's judgment lien could not attach except as against the actual interest owned by Gray. It was inferior to the outstanding contract of Crumley. The judgment of the trial court is affirmed.

MASON, C. J., LESTER, V. C. J., and RILEY, CLARK, CULLISON, SWINDALL, and ANDREWS, JJ., concur. HUNT, J., absent.