FIRST MUSTANG STATE BANK, Brookwood National Bank, Bill W. Scarberry, Raymond J. Rudnicki and Geronimo Properties, an Oklahoma General Partnership, Appellees,

v.

GARLAND BLOODWORTH, INC., d/b/a Garland Bloodworth and Associates, Appellant.

No. 70084.

Supreme Court of Oklahoma.

July 2, 1991.

As Amended on Grant of Rehearing for Limited Purpose Jan. 14, 1992.

Ramey & Nelson, Robert W. Nelson and Michael N. Brown, Yukon, for appellee, First Mustang State Bank.

James E. Britton and Jim B. Goin, Hastie and Kirschner, Oklahoma City, for appellee, Brookwood Nat. Bank.

Michael Avant–Pybas, Mustang, for appellees, Bill W. Scarberry, Raymond J. Rudnicki and Geronimo Properties, an Oklahoma Partnership.

Carl F. Wemhoener, Bloodworth & Associates, Oklahoma City, for appellant.

SUMMERS, Justice:

Don Brown (Seller) owned land on which First Mustang State Bank (First Mustang) held a mortgage and note for $35,000.00. On August 12, 1985, Brown entered into a contract for the sale of this particular property with the partners of Geronimo Properties (Buyer). The sale price was $135,000.00. It is this realty, which we will call "Property A," that is the subject of the present appeal.

Seller also owned other realty on which First Mustang and Brookwood Bank (Brookwood) held mortgages. As used here, "Banks" will refer to these two banks. In March 1985, First Mustang and Brookwood instituted separate actions seeking foreclosure of the mortgages on these other properties, which we will call "Property B." After the actions were filed, the Banks learned of the pending sales contract on the subject property, or Property A.

The Banks secured a temporary restraining order and injunction stalling the closing of the sale of Property A, and then instituted separate prejudgment garnishment actions seeking to garnish or attach the proceeds of the land sale contract. They asked that these proceeds be applied to any deficiency judgment arising out of their separate foreclosure actions against Property B. Prior to the prejudgment garnishment hearing, but after Seller had notice of the hearing, Seller executed a mortgage to Garland Bloodworth and Associates (Attorney) on Property A. This mortgage was to secure the payment of legal fees accrued over the past years. The parties do not allege that this mortgage was given for fraudulent purposes. The mortgage was in the amount of $100,000.00. Attorney did not immediately record the mortgage.

At the prejudgment garnishment hearing, the trial judge issued an order entitling the Banks to issue a prejudgment garnishment summons to Buyer. Such garnishment was against the proceeds of the land sale contract on Property A. The court also ruled that the proceeds due Seller from the contract were to be paid into court to await a ruling on distribution. Attorney represented Seller at this proceeding and objected to the garnishment on behalf of Seller. Attorney did not intervene as a party to assert his claim under the mortgage.

After the hearing on that same day, Attorney filed his mortgage. On the following day, the Banks caused garnishment summonses to be issued and served upon Buyer. On that same day, Buyer filed an action for specific performance under the land contract along with a *lis pendens* notice.

Three months later, the Banks obtained deficiency judgments against Seller in the two separate foreclosure actions. First Mustang Bank then initiated the current action, seeking foreclosure of its first mortgage on Property A. The trial judge granted First Mustang's motion for summary judgment on the first mortgage. That part of the action is not appealed by anyone and will not be disturbed on appeal.

The trial court also sustained the summary judgment motion of Buyer, ruling that Attorney's mortgage was null and void as to the interests of Buyer, and that the Buyer took free and clear of Attorney's mortgage. The court further held that because Attorney knew the Banks were seeking garnishment of the proceeds when he took the mortgage, the rights of the Banks were superior to the mortgage. The court ordered the proceeds of the land sale con-

tract to be used to satisfy the deficiency judgments obtained by the Banks, free and clear of any claim held by Attorney.

Attorney appealed and the Court of Appeals affirmed in an unpublished opinion. Attorney petitioned for certiorari and we have granted the writ. The questions presented are: (1) Did the doctrine of equitable conversion prevent Seller from executing a valid mortgage in favor of Attorney? (2) If not, does attorney's mortgage alter Buyer's interest in the realty? and (3) Does the attorney's mortgage have priority over the Banks' prejudgment garnishments? Our answers are "no", "no", and "yes", in that order. We vacate the opinion of the Court of Appeals, and reverse and remand to the trial court for further proceedings.

## I.  THE DOCTRINE OF EQUITABLE CONVERSION

The Banks and Buyer assert that Attorney's mortgage is null and void because it was executed after the land sale contract. They contend that once the land sale contract was agreed upon by the parties, an equitable conversion occurred and equitable title passed to Buyer. The mortgage, they say, was invalid because Seller did not have the power to grant the mortgage.

■ The doctrine of equitable conversion, long recognized by Oklahoma, "is a fiction resting upon the fundamental rule of equity that equity regards that as done which ought to be done." *First Sec. Bank v. Rogers*, 91 Idaho 654, 657, 429 P.2d 386, 389 (1967); *see also Asher v. Hull*, 207 Okl. 478, 250 P.2d 866, 870 (1952); *Dick v. Vogt*, 196 Okl. 66, 162 P.2d 325, 331 (1945). Under the doctrine, an equitable conversion may take place when a contract for sale becomes binding on the contracting parties. *Rogers*, 91 Idaho at 657, 429 P.2d at 389. The theoretical basis for the doctrine is founded on the concept that at the time the contract for sale is entered into by the parties, the purchaser becomes the true owner of the realty, with the seller retaining the right to possession and legal title as security for the payment price. *Powell*, 6A

Powell on Real Property § 925[6] (Supp. 1991). But it is important to remember that this doctrine is purely a creature of equity and is not favored in law. *Tiffany*, 1 The Law of Real Property § 299 (1939).

> As a consequence, the effect of a contract for the purchase of land is very different at law and in equity. At law the estate remains in the estate of the vendor and the money that of the vendee, while in equity the estate from the signing of the contract is the real property of the vendee.... *In re Houghton*, 147 N.J.Super. 477, 371 A.2d 735, 739 (1977).

■ The doctrine of equitable conversion divides the "bundle" of property rights between the seller and the purchaser. The purchaser is regarded as the owner and generally has the right to possession of the realty. The seller's position is analogous to that of the mortgagee who retains legal title as security for the purchase price. *Security Bank v. Chiapuzio*, 304 Or. 438, 747 P.2d 335, 337 n. 1 (1987). In other words, the buyer's interest is converted to realty and the seller's interest is converted to personalty. *See generally* 18 C.J.S. Conversion § 5; *Rogers*, 91 Idaho at 657, 429 P.2d at 389.

■ When a contract of sale vests an equitable estate in the buyer, certain ownership features are created:

> Such ownership includes the right to sue to quiet title; to sue for trespass to the land and for other injury and waste; and as between vendor and vendee, the loss of improvements destroyed shall be borne by the vendee. *Asher v. Hull*, 250 P.2d at 870. (Citations omitted)

On the other hand, the contract is still executory to the extent the "obligation to pay and the one to convey are mutually dependent, and the full equitable title and right to obtain legal title does not vest in the purchaser until he has complied with his obligation to pay...." *Id.*

■ Until the purchaser has paid the full amount of the contract price, the seller continues to have a real property interest in the land. This interest is not only mortgagable to third parties, but is also subject

to other liens. *Chiapuzio*, 747 P.2d at 337 n. 1. These third-party mortgagees and creditors have a valid claim to the realty, subject to the prior claim of the purchaser. *Id.* The claims of third-party creditors extend to the seller's remaining interest in the land and operates to bind the land to the extent of the unpaid purchase price. *Rogers*, 91 Idaho at 657, 429 P.2d at 389. Although the value of the seller's interest decreases with each payment, the character of the interest does not change until the contract is completed, because the purchaser's interest is subject to destruction by failure to make the necessary payments. *Chiapuzio, supra; see also Bourke v. Krick*, 304 F.2d 501, 504 (4th Cir.1962) (applying Maryland law).

■ Being grounded in equity, the doctrine of equitable conversion has limited application, and will not be applied to defeat or alter the claims of third parties not in privity with the contracting parties. *Chiapuzio*, 747 P.2d at 337 n. 1; *Security State Bank v. Luebke*, 303 Or. 418, 737 P.2d 586, 589 (1987).[1] The reasoning behind this restriction was explained in *In re Houghton*, 147 N.J.Super. 477, 371 A.2d 735, 738 (1977) quoting *In re DeStuers*, 199 Misc. 777, 99 N.Y.S.2d 739, 749 (Surr.Ct.1950):

> The fiction of conversion adjusts rights and imposes equities, but it cannot change facts or work inequity ... [T]his amiable pretense must be confined by the impulses which inspire it to the persons in privity with the transaction. There is no equitable need for its extension to others. Strangers have nothing to do with the reason for its being and nothing to do with its operation. In the best defined case of equitable conversion the legal owner of the lands retains as to persons not in equitable relations to himself all the rights and duties which belong to his seisin.

■ In the present case, both the Banks and Buyer assert that the doctrine of equitable conversion should apply to defeat the mortgage of Attorney. We first inquire as to whether the Banks may invoke the doctrine. The answer must be in the negative. The doctrine will not be applied "so as to alter the claims of third parties not in privity with the contracting parties." *Chiapuzio*, 747 P.2d at 337 n. 1. Obviously, Seller had the right to mortgage the realty, even though it was subject to a land sale contract. The contract for sale, being executory, did not transfer all of the property rights of Seller, and Seller had a mortgagable interest in the property. In seeking to nullify the mortgage, the Banks attempt to use the equitable doctrine to their benefit. However, they were not in privity with Buyer or Seller. As to the Banks, we will not apply the doctrine. The trial court erred in holding that the mortgage was null and void.

■ The next question is whether the doctrine applies with regard to Buyer. We find that it does.[2] It is for this situation that the courts of equity developed the doctrine to prevent inequities from occurring between the parties of a land sale contract. *See Tiffany*, at 528–30. Under the doctrine the mortgage of Attorney was taken subject to the rights of Buyer. *See Tiffany*, at 531. As stated in *Chiapuzio*, the seller's right is mortgagable *subject to the rights of the purchaser.* Here, the mortgage was executed after the contract for sale and thus does not affect the rights of Buyer. It merely attached to those rights which remained with the Seller. *See Tiffany*, at 534. The rights of the Attorney under the subsequent mortgage do not

---

**1.** Neither may the doctrine be applied to defeat the intent of the parties. *Bartlesville Oil & Improvement Co. v. Hill*, 30 Okl. 829, 121 P. 208, 211 (1911); *see generally* 18 C.J.S. Conversion § 3. Because the doctrine is one of equity, it is not applicable if the parties expressly agreed otherwise, or if from the contract, it is clear that its application was not intended. *See Bartlesville*, 121 P. at 211. If the parties intend that neither legal nor equitable title shall pass to the buyer until the contract is complete, the doctrine of equitable conversion will not be applied. *Id.*

**2.** The doctrine of equitable conversion may apply as between seller and purchaser, but may be inapplicable to others. *Bourke v. Krick*, 304 F.2d 501, 504 (4th Cir.1962); Tiffany, *Real Property* § 296 (Supp.1986).

defeat or decrease the rights of Buyer under the prior land sale contract. *Carefree Homes v. Production Credit Ass'n*, 81 Wis.2d 541, 260 N.W.2d 759, 761 (1978). The trial court was correct in holding that Buyer's rights in the property were not affected by the subsequent mortgage.

## II. PRIORITY OF THE LIENHOLDERS

The final question focuses on the priority of the Banks' claims. Since we have determined that Seller had a mortgagable interest in the property, we must now decide whether the Banks' garnishments have priority over Attorney's mortgage. The trial court ordered Buyer to pay the proceeds of the contract into the court so that a determination as to distribution could be made. The court ordered that the proceeds be evenly divided between the two banks. Attorney urges this was error because his mortgage was filed before the Banks caused the prejudgment garnishment summonses to issue.

The Banks assert three separate reasons that garnishment liens have priority over the mortgage. First, they assert that the garnishments were prior in time to the mortgage. It is undisputed that the hearing on the prejudgment garnishment was held after the mortgage was executed but before it was filed. Immediately after the hearing, Attorney filed the mortgage. The following day, the Banks issued the garnishment summonses. The Banks urge that the relevant date is that of the hearing. Attorney urges that the critical date is the date of the issuance of the summonses.

■ To determine the date on which the garnishment lien attaches, we turn to 12 O.S.1981 § 1185, which states that *"[f]rom the time of the service of the summons upon the garnishee* he shall stand liable to the plaintiff to the amount of the property ... in his possession...."* The garnishee does not become liable for the funds held until the summons is served. Clearly, the statute contemplates the critical date to be the date of service of the garnishment summons. Consistent with this interpretation is *First Nat'l Bank v. City Guaranty*

*Bank,* 174 Okl. 545, 51 P.2d 573, 577 (1935), wherein this Court stated that under Section 628, now Section 1185, the garnishment lien attaches at the time the summons is served. *See also Butler v. Breckinridge,* 442 P.2d 313, 317 (Okla.1967); *Okla. Oxygen Co. v. Citizens State Bank & Trust Co.,* 274 P.2d 372, 373 (Okla.1954).

The Banks rely on *Selby v. Kelly Rae Apts. Inc.,* 634 P.2d 1303, 1306 (Okla.1981) for the proposition that the relevant date is the date upon which the proceedings are instituted. However, *Kelly* dealt with the question of priority between two garnishing creditors. The date of the institution of proceedings is relevant, if at all, when the dispute arises between garnishing creditors. *See Okla. Tool & Supply Co. v. Drumright,* 97 Okl. 165, 222 P. 975 (1924).

■ In this case, the garnishment summons was served the day *after* Attorney filed his mortgage. The garnishment lien attached the day that the summonses were served. A prior recorded mortgage has priority over liens subsequently filed. *See* 42 O.S.1981 § 15; *Liberty Nat'l Bank & Trust Co. v. Kaibab Ind. Inc.,* 591 P.2d 692, 694 (Okla.1978). The right of garnishment is subject to preexisting rights of third persons and cannot displace prior valid rights against the debt or property involved. *See El Reno Foundry & Machine Co. v. Western Ice Co.,* 54 Okl. 116, 153 P. 1107, 1109 (1915); *see generally* 38 C.J.S. Garnishment § 183. Hence, Attorney's mortgage was prior in time to the garnishment lien and has a higher priority with regard to the contract proceeds.

■ The Banks' second argument is that even if the mortgage was filed before the garnishment liens attached, Attorney has "unclean hands" because of his knowledge of the Banks' motion for prejudgment garnishment. It is undisputed that Attorney had knowledge of the pending prejudgment garnishment hearing and the land sale contract, and in filing his mortgage, was attempting to establish a priority higher than the Banks'. Attorney answers this argument by pointing out that he did no more than perfect his security interest and

that his knowledge of the prejudgment garnishment proceedings is inconsequential.

As authority for their assertion, the Banks cite *McAtee v. Garred*, 185 Okl. 314, 91 P.2d 1095 (1939) and *Okla. State Bank v. Crumley*, 146 Okl. 12, 293 P. 218 (1930). *McAtee* dealt with a situation in which plaintiffs were fraudulently induced to grant a mortgage to defendant company. Defendant company urged that it had no notice of its agent's fraudulent actions and that the mortgages should be upheld. This Court cancelled the mortgage because the fraudulent acts of the agent were known by the defendant. *McAtee* does not support the Banks' position; the holding there hinged on the fraud of the mortgagee. The Banks do not allege fraud in Attorney's procurement of the mortgage.

*Crumley* involved a contract for mineral royalties which was improperly acknowledged. The trial court found that the subsequent mortgagee had notice of the contract, although it was improperly acknowledged. On appeal, this Court held that the mortgagee had knowledge of outstanding rights adverse to the mortgagor. Thus, the mortgagee took his interest subject to the outstanding claim. *Crumley*, 293 P. at 220. This case is distinguishable from the one at bar in that it involved a *clear undisputed property right* which was adverse to the mortgagor. In the present case, Attorney took the mortgage from Seller before the Banks secured a prejudgment garnishment. There were no outstanding "adverse" rights other than the rights of Buyer. The prejudgment garnishment was not granted until the day of the hearing and did not attach as a lien against Seller's interest until the following day.

Here, Attorney properly recorded his mortgage under 16 O.S.1981 § 15 and this recordation operated as notice to all subsequent creditors. *See* 46 O.S.1981 § 7. Although the prejudgment garnishment hearing was pending at the time Attorney took the mortgage, *the Banks had not yet secured any type of interest in the proceeds.*

The subsequent garnishments of the Banks do not take priority over the mortgage. Any other resolution would in essence invalidate our recording statutes as well as the rule that a garnishment does not attach until the summons is served. If we were to hold as the Banks urge, then a prejudgment garnishment could become a "lien" at the time it was first sought, or when the hearing was scheduled. Thus there would be no need for a hearing because the "lien" would have already come into existence. We do not believe that this falls in line with the garnishment statutes, the recording statutes or the purposes behind those statutes. *See* 12 O.S.1981 § 1185; 16 O.S.1981 §§ 15, 16; *Vann v. Whitlock*, 692 P.2d 68, 70 (Okla.App.1984).

As their last argument, the Banks urge that Attorney's security interest was improperly perfected. Attorney recorded his mortgage in accordance with real property recording statutes. The Banks say that it should have been perfected in accordance with the Uniform Commercial Code, 12A O.S.1981 § 9–402, since Attorney's interest was in the proceeds of the land sale contract, not in the actual realty. Attorney disagrees, arguing that a mortgage of realty was intended, and as such, he was required to file only under the recording statutes dealing with realty.

This question, one of first impression in this state, has been presented in several other jurisdictions. *See* 76 A.L.R. 4th 765 (1990); *Security Bank v. Chiapuzio*, 747 P.2d 335 (Or.1987); *In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424 (1980). The confusion occurs because the seller actually has two separate interests in realty subject to a land sale contract: (1) the interest in land and (2) the interest in the proceeds by virtue of the land sale contract. *Chiapuzio*, 747 P.2d at 337; *Citicorp v. Fremont Nat'l Bank*, 738 P.2d 29, 31 (Colo.Ct. App.1987).

In *Chiapuzio*, the seller contracted to sell land to the buyer. Before this sale was completed, the seller transferred to a bank his "right and interest in and to" the property as security for a loan. The bank filed notice of this interest as required by the realty recording statutes. Later, the defendant purchased the seller's interest in

the sales contract. The bank sued to foreclose its security interest in the contract and the land. The defendant urged that the filing by the bank was not sufficient to perfect its interest because as the bank's interest was, for all practical matters, in the proceeds of the land sale contract, rather than in the realty itself.

The Oregon Supreme Court agreed that two different interests were involved. As for the interest in realty, the court concluded that the agreement between the bank and the seller was akin to a mortgage, thus requiring filing under the realty recording statutes. But the court continued by pointing out that the parties' language showed an intent to transfer more than just an interest in realty, and that the bank's interest in the proceeds of the contract was separate and distinct from the realty interests. The fact that the two interests were separate and distinct created the problem of determining how to perfect such interests:

> Because it is possible to use the vendor's interest in the land sale contract as security without thereby automatically including the vendor's interest in the land, recording any security agreement involving a vendor's interest in a land sale contract may not protect the hold of that interest against all other claimants. *When an interest in a land sale contract is assigned without a corresponding assignment of an interest in the land, recording in the real property records may not protect the security interest. Id.* at 339. (Emphasis added)

The court concluded that compliance with Article 9 of the Uniform Commercial Code was required as to the interest in the proceeds of the contract.

The Oregon Court recognized that the bank had not perfected its security interest in the contract as required by Article 9, but determined that the buyer had constructive notice of the security interest. Even though the perfection of the security interest in land required a filing different than that of the security interest in proceeds, "the interests are so closely related that legally adequate knowledge of one interest should be deemed to give constructive notice of an interest in the other." *Id.* at 344. Accordingly, the bank's filing was considered adequate to give it priority over the subsequent buyer.

Likewise, in *Freeborn,* a similar question was presented by two consolidated cases. In the first case, the seller obtained a loan by using his interest in a land sale contract as security. In exchange for the loan, the seller expressly deeded the realty to the banks and assigned the contract. The documentation stated that the transfer of realty was "for security purposes only." In the second case, the seller obtained a loan by using as security his interest in the contract. The documentation stated that the security was "Seller's Assignment of Contracts and Deed." No deed, however, was delivered. The Washington Supreme Court concluded that only an interest in the contract proceeds was involved. In order to perfect a security interest, filing under Article 9 was required. "We hold that where the right to real estate contract payments *alone* is assigned and the legal title held by the vendor is not simultaneously conveyed by deed ... the assignee must file pursuant to UCC Article 9." *Id.* 617 P.2d at 428 (Emphasis in original) Because the creditor failed to do this, the creditor's status was that of an unsecured creditor.

In the present case, Attorney was clearly granted a mortgage on the property subject to the land sale contract. Under Oklahoma law, a mortgage does not operate as a conveyance vesting in the mortgagee any estate in realty. *Coursey v. Fairchild,* 436 P.2d 35, 38 (Okla.1967). Instead, it creates a lien against the realty in order to secure the payment of the debt. *Id.* At the hearing on the motion to reconsider, Attorney had argued that his interest was essentially an interest in the proceeds of the land sale contract. The Banks, relying on those comments of Attorney, argue that Article 9 is applicable. The determinative question is whether the seller transferred his interest in realty or his interest under the land sale contract.

The documentation relied on was a mortgage granted to Attorney to secure the

debt previously incurred for attorney's fees. No mention of contract rights appear in the documents. Unlike *Chiapuzio*, Attorney was not granted all "rights and interest in and to" the land sale contract, nor was the contract assigned to him. There was only one interest transferred to Attorney—a lien against Seller's interest in Property A. Article 9 of the Uniform Commercial Code is thus not implicated.[3] *Hughes v. Russo*, 20 U.C.C.Rpt.Serv. 1349, 1354 (S.D.Fla.1976).

Under his mortgage Attorney has the normal rights of a mortgagee. Because his mortgage preceded the garnishment liens, it must be satisfied before other creditors may claim the proceeds of the land sale contract.[4] Accordingly, the Court of Appeals' opinion is vacated. The trial court's judgment is affirmed as to Rudnicki, Scarberry and Geronimo Properties (Buyers) but is reversed as to the Banks' prejudgment garnishment efforts to come before Attorney. The matter is thus remanded to the trial court for proceedings consistent with this opinion.

HODGES, V.C.J., and LAVENDER, DOOLIN and ALMA WILSON, JJ., concur.

SIMMS, J., concurs in result.

HARGRAVE, J., dissents.

OPALA, C.J., and KAUGER, J., not participating.

---

**3.** In light of this fact-specific resolution we do not reach the question of whether a filing under Article 9 may be required to perfect an interest in land sale contract proceeds.

**4.** We again note that the trial court's ruling as to first mortgage in the amount of $35,000.00 held by First Mustang is not at issue.