2001 OK CIV APP 106

**Richard RICE d/b/a Costwatch Consulting Group, Plaintiff/Appellee,**

v.

**AMERICAN COMMUNICATIONS CONSULTANTS OF NORTH AMERICA, INC., a North Carolina corporation; and Tele–Solutions, Inc., a North Carolina corporation, Defendants/Appellants,**

and

**Hertz Technologies, Inc., Garnishee/Appellee.**

No. 94,910.

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided Aug. 7, 2001.

D. Lynn Babb, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, OK, for Appellees.

Odell D. Campbell, Larry A. Morgan, Morgan and Morgan, P.C., Oklahoma City, OK, for Appellants.

GOODMAN, Presiding Judge:

¶ 1 This is the appeal of American Communications Consultants of North America, Inc., and Tele–Solutions, Inc., from the trial court's June 22, 2000, order which held, among other things, that certain sums held by third party Hertz Technologies, Inc., (Hertz) were subject to the garnishment action of Richard Rice d/b/a Costwatch Consulting Group (Costwatch). Based upon our review of the facts and applicable law, we affirm.

## FACTS

¶ 2 American Communications (American) and Tele–Solutions (Tele–Solutions) are long-distance telephone service providers. Costwatch was one of their sales agents. Costwatch sold long-distance services, and generated over $80,000 in commissions. When American and Tele–Solutions failed to pay Costwatch the commissions, Costwatch arbitrated the matter in Colorado, eventually obtaining a judgment of $80,000, plus interest. The District Court for Boulder County, Colorado, executed the arbitration judgment January 31, 2000.

¶ 3 Costwatch filed the Colorado judgment in Oklahoma County District Court March 13, 2000, as a foreign judgment. On April 10, 2000, Costwatch filed a garnishment affidavit, alleging that Hertz Technologies (Hertz) was indebted to, or had property belonging to, American and Tele–Solutions. Hertz answered the garnishment, stating that while it did owe money to American and Tele–Solutions, it did not know the exact amount at the time of its answer. Further, it alleged some of the money owed to American and Tele–Solutions may belong to other entities. In a pleading filed May 24, 2000, Hertz reported it owed $11,696.18 to Tele–Solutions, but owed no fees to American.[1]

¶ 4 Tele–Solutions subsequently filed a pleading stating that it was an agent of certain other third parties, and the money Tele–Solutions was owed by Hertz represented the commissions owed to those third parties, and did not belong to Tele–Solutions. In other words, Tele–Solutions claimed that the moneys owed to it by Hertz belonged not to Tele–Solutions, but to the principals that Tele–Solutions represented. Therefore Tele–Solutions claimed the money owed to it was exempt from Costwatch's garnishment action.

¶ 5 Following evidentiary hearings on May 26, and June 9, 2000, the trial court concluded that the money in Hertz' possession which was owed to Tele–Solutions was not exempt from Costwatch's garnishment action. Tele–Solutions appeals.

## ANALYSIS

¶ 6 Tele–Solutions claims the trial court erred when it found as a matter of law that certain funds held by Hertz were not exempt from garnishment. Tele–Solutions claims that the money it receives from Hertz belongs to other parties, and is therefore exempt from garnishment. Costwatch counters by claiming that while the money possessed by Hertz which was owed to Tele–Solutions may ultimately be paid out as third party commissions by Tele–Solutions, that money does not yet belong to the third parties, and is therefore not exempt from garnishment. We agree with Costwatch.

¶ 7 The evidence before the trial court showed that Hertz owed money to Tele–Solutions, which in turn likely owed that money to its own subagents. However, there is no evidence that Hertz owed money to any of Tele–Solutions's subagents directly.[2] Nor was there any evidence that the third-party subagents possessed any superior liens, mortgages, or assignments giving them priority to any of that money.[3] While Tele–Solutions demonstrated that it might pay the money to several possible agents, it failed to

---

1. Because of the nature of the businesses involved, and the fact that Costwatch's garnishment may continue for several months, the record suggests that Hertz could owe Tele–Solutions money some months, and owe American money other months, or both.

2. Indeed, Hertz' attorney stated to the trial court: "We have a direct contractual relationship with the defendant [Tele–Solutions]. We know that he [sic] has subagents that work under him. But we don't pay them directly."

3. None of the third-party subagents who were allegedly owed the money filed any objection or appearance in the case.

prove those agents actually owned the money.

¶ 8 Tele–Solutions cites *Culie v. Arnett,* 1988 OK 134, 765 P.2d 1203, *First Mustang State Bank v. Garland Bloodworth, Inc.,* 1991, OK 65, 825 P.2d 254, and *Miller & Miller Auc., Inc. v. G.W. Murphy Indus., Inc.,* 530 P.2d 416 (Wyo. 1975), in support of its proposition that Costwatch may not garnish the money owed to Tele–Solutions by Hertz because Tele–Solutions in turn owes that money to third-party subagents. Each of those cases are clearly distinguishable on their facts.

¶ 9 In *Culie,* 1988 OK 134 at ¶ 5, 765 P.2d at 1205, the Oklahoma Supreme Court stated:

> In a garnishment proceeding the judgment creditor stands in the shoes of the judgment debtor to enforce a liability owed to the latter by a third party——the garnishee. The former may claim no greater rights against the garnishee than the latter himself possesses.

 ¶ 10 In the case in controversy, Costwatch has the same, but no greater, rights to collect the money held by Hertz than Tele–Solutions has to collect the money from Hertz. Under *Culie,* Costwatch may take whatever action is necessary to require Hertz to pay Costwatch instead of Tele–Solutions. What *Culie* does not require, and what Tele–Solutions has failed to show by any authority, is that Costwatch is obligated to assume the liabilities that Tele–Solutions may have to other, third parties. Thus while Costwatch may stand in Tele–Solutions' shoes and collect money owed to Tele–Solutions from Hertz, Costwatch does not stand in Tele–Solutions' shoes to pay Tele–Solutions' debts to others. Thus, *Culie* does not support Tele–Solutions's position.

¶ 11 Neither *First Mustang Bank* nor *Miller & Miller* supports Tele–Solutions's position. In each of those cases, the judgment creditor was barred from garnishing money allegedly owed to the judgment debtor because, in both cases, a previous contractual obligation existed which acted to bar the judgment debtor from receiving any money. In *First Mustang Bank,* the holder of a mortgage had first priority to certain moneys that would otherwise be paid to the judgment debtor, and were therefore not subject to garnishment. In *Miller & Miller,* the judgment debtor had previously executed an income assignment which operated to divert money from the judgment debtor to a third party, thus effectively preventing the judgment creditor from recovering any money. In the case in controversy, there exists no preexisting mortgage, assignment, or other lien which would operate to prevent Tele–Solutions from collecting its money from Hertz. The trial court correctly held that the money paid into the court registry was not exempt from Costwatch's garnishment action.

¶ 12 Because we hold the trial court correctly determined that the money held by Hertz is subject to Costwatch's garnishment action, we need not address the remainder of Tele–Solutions' propositions of error.

¶ 13 Tele–Solutions claims that the trial court erred by granting judgment prematurely, failing to set the matter for trial, refusing to permit additional discovery, failing to adequately read certain briefs, and failing to add necessary parties. We find no merit to these contentions. Once the trial court correctly determined that the third parties did not own the money claimed by Costwatch, there was no need to interplead those parties, or conduct discovery to explore the relationship between Tele–Solutions and those third parties. Further, we find no sufficient grounds to reverse the otherwise valid judgment to require a trial for what is essentially a bookkeeping matter between Hertz, Costwatch, and Tele–Solutions. Costwatch may continue to garnish the funds held by Hertz and owed to Tele–Solutions until Costwatch's judgment is satisfied. If Costwatch collected more that it was entitled, Tele–Solutions has remedies available to it in a separate action.

¶ 14 AFFIRMED.

¶ 15 REIF, V.C.J., and COLBERT, J., concur.