2011 OK CIV APP 45

BANK OF COMMERCE,
Plaintiff/Appellee,

v.

BREAKERS, L.L.C., an Oklahoma Limited Liability Company; Pointe Marin, L.L.C., an Oklahoma Limited Liability Company; Harold W. Tompkins, a/k/a Hal Tompkins, a/k/a Harold W. Thomkins; RCB Bank, an Oklahoma Banking Corporation; Villas Development, L.L.C., an Oklahoma Limited Liability Company; Tulsa Energy Control, Inc., a Corporation; Lifestyles Stores, Inc., a Corporation; Mill Creek Lumber & Supply Company, a Corporation; Davis Custom Painting, Inc., a Corporation; Fuller, Chlouber & Frizzell, L.L.P., an Oklahoma Limited Liability Partnership; and Mary Jane Law, in her capacity as Treasurer of Delaware County, Oklahoma, Defendants,

and

Marvin Y. Jin and Soohyun Jin, Husband and Wife; and Bank of Oklahoma, N.A., Movants/Appellants.

No. 108,461.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 18, 2011.

Galen L. Brittingham, Marthanda J. Beckwith, Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, a Professional Corporation, Tulsa, Oklahoma, for Plaintiff/Appellee.

William McKee, Ken Yates, The Robinson Law Firm, Tulsa, Oklahoma, for Movants/Appellants.

KENNETH L. BUETTNER, Judge.

¶1 Movants/Appellants Marvin Y. and Soohyun Jin (Jins) and Bank of Oklahoma (BOK) (collectively, Appellants) appeal from the trial court's order denying their Motion to Intervene in a foreclosure action.[1] Appellants acquired their interest in the property at issue in this case after *lis pendens* was recorded. As a result, Appellants' interest is void as to the prevailing party in this case. Appellants have failed to prove the elements necessary for intervention of right and we find no abuse of discretion in the trial court's denial of permissive intervention. We therefore affirm.

¶2 The record shows the Jins signed a Real Estate Sales Contract February 12, 2009, in which they agreed to purchase Lot 18 of the Villas at Shangri–La Resort from Villas Development, L.L.C. In May 2009, BOC and RCB each filed actions to foreclose on mortgages covering Lots 12–18 of the Villas at Shangri–La Resort. RCB named the Jins as Defendants in its Petition. BOC did not name Appellants as Defendants in its Petition.[2] BOC filed a Notice of Pendency of

---

1. Bank of Commerce (BOC) and RCB Bank filed foreclosure petitions on mortgages on the same property. The trial court ordered those cases consolidated November 4, 2009. This appeal is a companion case to the appeal of summary judgment in the foreclosure cases (Case No. 108,370). See Okla. Sup.Ct. Order filed January 5, 2011.

2. RCB's mortgage was granted by Villas, L.L.C.; BOC's mortgage was granted by Breakers, L.L.C., a predecessor in title. Each bank sued its mortgagor as well as various other lienholders. More detailed facts are outlined in this court's opinion in the companion appeal.

Action against Lot 18 with the Delaware County Clerk May 26, 2009.

¶ 3 The Jins' purchase of Lot 18 closed June 4, 2009. BOK provided financing and the Jins executed two mortgages on Lot 18 in favor of BOK. The Jins' Special Warranty Deed and BOK's mortgages were recorded June 5, 2009.

¶ 4 BOC filed, in RCB's case, a Combined Answer, Counterclaim, and Cross–Claim July 7, 2009, in which it averred the Jins may claim some interest in the property and asked for judgment against them. BOC did not make a claim against BOK. BOC mailed a copy of this pleading to attorney Marcus N. Ratcliff, who had not entered an appearance on behalf of the Jins.[3] RCB dismissed its case against the Jins with prejudice September 22, 2009.

¶ 5 The district court consolidated the BOC and RCB cases November 4, 2009. Hearing on BOC's and RCB's summary judgment motions was held February 11, 2010, after which the trial court announced its finding that BOC's mortgage had priority over RCB's.

¶ 6 Before the court filed its Journal Entry, Appellants filed their Motion to Intervene April 7, 2010. Appellants asserted they were permitted to intervene of right under 12 O.S.2001 § 2024(A).

¶ 7 BOC filed its Response and Objection to the Motion to Intervene May 7, 2010. BOC argued Appellants were estopped from asserting any interest in the property because their purchase closed after the notice of *lis pendens* was recorded, and as a result, Appellants' interest was void as to the pre-

vailing party's interest. BOC further contended that the trial court's summary judgment decision, which found BOC's mortgage had priority and which ordered the property sold to satisfy the judgment, had foreclosed any interest Appellants had in the property. BOC also argued that it served its Combined Answer and Cross–Petition on the Jins' counsel and that they failed to answer and were therefore barred from intervening nine months later, after summary judgment had been decided. Lastly, BOC contended that if Appellants were allowed to intervene at all, they should intervene in cases then pending against the title insurer.[4]

¶ 8 Appellants filed a Reply May 21, 2010. The claimed that the *lis pendens* statute did not apply because the *lis pendens* was filed after they allegedly acquired an equitable interest in the property upon signing the purchase contract, in February 2009. Based on their contention that the *lis pendens* statute did not apply, Appellants claimed the summary judgment could not have foreclosed the Jins' interest in Lot 18. Next, they contended that because they have an interest in Lot 18, they were entitled to intervene as of right.

■ ¶ 9 Following a June 2, 2010 hearing, the trial court issued its Order Denying Motion to Intervene June 30, 2010. Appellants sought a writ of mandamus from the Oklahoma Supreme Court which was denied June 28, 2010 in Case No. 108,396. Appellants then filed their Petition in Error. We review the denial of a motion to intervene as of right *de novo. State ex rel. Oklahoma Corp. Comm. v. McPherson,* 2010 OK 31, 232 P.3d 458, 466.[5]

3. Appellants attached Ratcliff's affidavit to their Reply to BOC's Response to Motion to Intervene. Ratcliff stated in his affidavit that he represented the Jins in their purchase of Lot 18, but that he did not file an entry of appearance in the foreclosure suits and that the Jins were not personally served with summons in the foreclosure suits. Ratcliff further averred he did not assent to accept service on behalf of the Jins and lastly, "(n)either I nor my clients received a copy of the Motion for Summary Judgment" filed by BOC, nor notice of the hearing on summary judgment.

4. BOC asserted that RCB sued First American and Grand River in Case No. CJ–09–681 and that

Villas sued First American, Lawyers Title, and Grand River in Case No–CJ–10–12.

5. In that case, the Oklahoma Supreme Court explained:

Our Pleading Code adopts a procedure for intervention based upon a federal counterpart. *Brown v. Patel,* 2007 OK 16, ¶ 16, 157 P.3d 117, 123. Federal courts use an abuse-of-discretion standard when reviewing an order granting or denying permissive intervention. *Alameda Water & Sanitation District v. Browner,* 9 F.3d 88, 89–90 (10th Cir.1993) citing *Allen Calculators, Inc. v. National Cash Register Co.,* 322 U.S. 137, 142, 64 S.Ct. 905, 908,

¶ 10 Appellants sought to intervene as of right. The Oklahoma Pleading Code provides, in pertinent part:

A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:

1. When a statute confers an unconditional right to intervene; or

2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

As noted by Appellants, Oklahoma cases have looked to the federal courts' four part test for intervention by right: (1) timeliness; (2) proof of a significant, protectable property interest in the subject of the action; (3) a showing that the disposition of the case may impair or impede the movant's ability to protect his interest; and (4) the existing parties may not adequately represent the movant's interest. *Brown v. Patel* 2007 OK 16, ¶ 17, 157 P.3d 117.

¶ 11 Appellants argue their Motion to Intervene was timely because they were not joined in BOC's case and they "were essentially ignored throughout that litigation." Appellants complain that they were not joined or served in BOC's case because BOC relied on its notice of *lis pendens*.

¶ 12 Oklahoma's *lis pendens* statute, 12 O.S.2001 § 2004.2, provides (emphasis added):

A. Upon the filing of a petition, the action is pending so as to charge third persons with notice of its pendency. While an action is pending, no third person shall acquire an interest in the subject matter of the suit as against the prevailing party's title; except that:

1. As to actions in either state or federal court involving real property, such notice shall be effective from and after the time that a notice of pendency of action, identifying the case and the court in which it is pending and giving the legal description of the land affected by the action, is filed of record in the office of the county clerk of the county wherein the land is situated; and

2. Notice of the pendency of an action shall have no effect unless service of process is made upon the defendant or service by publication is commenced within one hundred twenty (120) days after the filing of the petition.

B. Except as to mechanics and materialman lien claimants, *any interest in real property which is the subject matter of an action pending in any state or federal court, acquired or purported to be acquired subsequent to the filing of a notice of pendency of action as provided in subsection A of this section, or acquired or purported to be acquired prior to but filed or perfected after the filing of such notice of pendency of action, shall be void as against the prevailing party or parties to such action.*

C. No person purporting to acquire or perfect an interest in real property in contravention of this section need be given notice of a sale upon execution or of hearing upon confirmation thereof.

Appellants contend that the *lis pendens* in this case did not affect their interest, based on their claim that they had an equitable interest in Lot 18 from the time they signed the purchase contract.

¶ 13 The authority on which Appellants rely is not supportive of their argument. Appellants cite *Alfrey v. Richardson*, 1951 OK 133, 204 Okla. 473, 231 P.2d 363, for the

88 L.Ed. 1188 (1944). One federal court has explained that appellate review of an order deciding intervention of right is reviewed *de novo* when a pure issue of law is presented, findings of fact are reviewed for clear error, and abuse-of-discretion review is used if the trial court's judicial discretion is involved. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–732 (D.C.Cir.2003). See also *Utah Assn. of Counties v. Clinton*, 255 F.3d 1246, 1249–

1250 (10th Cir.2001) ("We generally review a district court's ruling on the timeliness of a motion to intervene under an abuse of discretion standard.... When the court makes no findings regarding timeliness, however, we review this factor *de novo* .... We review *de novo* the court's rulings on the three remaining requirements of Rule 24(a)(2).").

*Id.* at n. 11.

rule that a contract for the purchase of real property passes equitable title to the purchaser. However, while in *Alfrey* the court referred to a contract for purchase, the facts described clearly show that the purchaser actually had a contract for deed and had taken possession and built equity by making payments for a number of years. The authority cited in *Alfrey* similarly involves contracts for deeds with the buyer in possession and making payments. In this case, the Jins have not claimed they paid anything before the time of the *lis pendens*. The facts of *Alfrey* are sufficiently distinguishable to show its rule is simply not applicable in this case.

¶ 14 For similar reasons, we do not find support in Appellants' cited case involving a tax certificate. See *Wells Fargo Credit Corp. v. Selby*, 2001 OK CIV APP 78, 26 P.3d 774. In that case, a party had purchased a tax certificate, by paying the taxes due, but the party did not obtain a tax deed until after *lis pendens* was filed by the bank seeking foreclosure. This court explained that due to the unique statutory scheme for obtaining a tax deed, *lis pendens* did not apply to bar a tax certificate from ripening into a tax deed. *Id.* at ¶ 13. In addition to the essential distinction that this case does not involve a special statutory scheme, we also note that in *Selby* the party had paid for the tax deed and necessarily had acquired an economic interest in the property before the *lis pendens*.

¶ 15 Appellants further rely on *First Mustang State Bank v. Garland Bloodworth, Inc.*, 1991 OK 65, 825 P.2d 254, 257, as support for their claim that by an "equitable conversion" the Jins became the equitable owners of Lot 18 at the time they signed the contract for sale. The facts of that case are complicated, but they also are distinguishable from this case. In *First Mustang*, after a property owner entered a contract to sell the property, the seller executed a mortgage on the property to an attorney to secure payment of fees. The buyer, and a bank seeking to foreclose on other property of the seller, claimed that the seller could not make a valid mortgage on the property after entering a contract to sell the property, contending that the buyer had equitable title to the property after entering the purchase contract. The Oklahoma Supreme Court explained the equitable doctrine on which the bank and buyer relied:

The fiction of conversion adjusts rights and imposes equities, but it cannot change facts or work inequity ... [T]his amiable pretense must be confined by the impulses which inspire it to the persons in privity with the transaction. There is no equitable need for its extension to others. Strangers have nothing to do with the reason for its being and nothing to do with its operation. In the best defined case of equitable conversion the legal owner of the lands retains as to persons not in equitable relations to himself all the rights and duties which belong to his seisin.

*Id.* at 257–258. (Citations omitted). The Oklahoma Supreme Court held that the bank was not in privity between the seller and buyer and could not benefit from an equitable conversion. The court held, however, that the buyer and seller were in privity and that the seller's mortgage to the attorney was effective subject to the buyer's rights, noting "(i)t is for this situation that the courts of equity developed the doctrine to prevent inequities from occurring between the parties of a land sale contract." *Id.*

¶ 16 In this case, the foreclosing banks were not in privity with Appellants. We find no support for Appellants' contention that the Jins had an equitable interest, simply from signing a purchase contract, which protected them from application of the plain language of the *lis pendens* statute. The purchase contract shows that it was executory: it includes the buyer's promise to purchase and the seller's promise to sell, in the future after certain conditions were met. The contract further provides that the risk of loss remained on the seller until closing.

¶ 17 Appellants have offered no explanation of why they elected to close on the purchase and mortgage after the *lis pendens* was filed. Appellants obtained their interests in Lot 18 from a party to the pending foreclosure action, and they are therefore bound by the judgment rendered against their grantor. *Hart v. Pharaoh*, 1961 OK 45, 359 P.2d 1074, 1079. Indeed, as noted by

Appellants, "all persons contemplating the acquisition of property are bound to take notice of an action involving the title, 'and will, on their peril, purchase the same from any of the parties to the suit.'" *Thompson v. General Outdoor Advertising Co.*, 1944 OK 195, 194 Okla. 300, 151 P.2d 379, 384. The effect of that filing is that Appellants' interest in the property is void as against the prevailing parties in the foreclosure action, based on the rule expressed in 12 O.S.2001 § 2004.2(B):

> (A)ny interest in real property which is the subject matter of an action pending in any state or federal court, acquired or purported to be acquired subsequent to the filing of a notice of pendency of action as provided in subsection A of this section, or acquired or purported to be acquired prior to but filed or perfected after the filing of such notice of pendency of action, shall be void as against the prevailing party or parties to such action.

As a result, Appellants are unable to prove the third element of the test for intervention of right: "a showing that the disposition of the case may impair or impede the movant's ability to protect his interest."

██ ¶ 18 Additionally, because Appellants were held to be on notice of the foreclosure proceedings, from the time of the *lis pendens* filing, we find their Motion to Intervene, filed nearly a year later, was untimely as a matter of law.

¶ 19 On *de novo* review, we find the Jins had no arguable interest in the property until after the *lis pendens* notice was filed. They acquired their interest after notice of proceedings against the property was properly recorded and they were held to be on notice. As a result, their interest in the property is void as to the prevailing party in the foreclosure case and could not be protected therefrom by intervention. The order denying the Motion to Intervene is AFFIRMED.

MITCHELL, P.J., and JOPLIN, J., concur.